# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1337-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent-Petitioner,<br>  v.<br>Zachary S. Friedlander,<br>      Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 271, 915 N.W.2d 730
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | March 12, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 11, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Jefferson |
|   JUDGE: | David Wambach |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents (opinion filed).<br>A.W. BRADLEY, J. dissents (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Jacob J. Wittwer*, assistant attorney general, with whom on the brief is *Brad D. Schimel*, attorney general. There was an oral argument by *Jacob J. Wittwer*.

For the defendant-appellant, there was a brief filed by *Mark R. Thompson*, assistant state public defender, with whom on the brief is *Jeremy A. Newman*, assistant state public defender. There was an oral argument by *Mark R. Thompson*.

2019 WI 22

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2017AP1337-CR
(L.C. No.  2015CF326)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

      Plaintiff-Respondent-Petitioner,

  v.

Zachary S. Friedlander,

      Defendant-Appellant.

**FILED**

**MAR 12, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1  ANNETTE KINGSLAND ZIEGLER, J.   This is a review of an unpublished, per curiam decision of the court of appeals, State v. Zachary S. Friedlander, No. 2017AP1337-CR, unpublished slip op. (Wis. Ct. App. Apr. 12, 2018) (per curiam), reversing the Jefferson County circuit court's order.  The circuit court order denied Zachary S. Friedlander ("Friedlander") sentence credit for time that he spent at liberty after being mistakenly released from prison without being transferred, pursuant to a detainer, to serve remaining conditional jail time.[1]  The court

---

[1] The Honorable David J. Wambach presided.

of appeals remanded this case to the circuit court with directions to amend Friedlander's judgment of conviction to reflect the sentence credit that Friedlander requested. We reverse the court of appeals.

¶2 This court is presented with two issues. First, we must determine the meaning of "in custody" under Wis. Stat. § 973.155 (2015-16).[2] In doing so, we consider whether the court of appeals' decisions in State v. Riske, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), and State v. Dentici, 2002 WI App 77, 251 Wis. 2d 436, 643 N.W.2d 180, are in harmony with this court's decision in State v. Magnuson, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536. We conclude that for the purpose of receiving sentence credit under § 973.155, a defendant is "in custody" whenever the defendant is subject to an escape charge under Wis. Stat. § 946.42, or another statute which expressly provides for an escape charge, as this court held in Magnuson. In doing so, we overrule the court of appeals' decisions in Riske and Dentici.

¶3 Second, we must determine whether Friedlander is entitled to sentence credit for time he spent at liberty after being mistakenly released from prison without being transferred to serve his remaining conditional jail time. We conclude that Friedlander is not entitled to sentence credit because Friedlander, who was at liberty, could not have been subject to

---

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

conviction for escape under Wis. Stat. § 946.42. Thus, we reverse the court of appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 On April 15, 2016, Friedlander pled no contest to one count of felony bail jumping according to the terms of a plea agreement. According to the plea agreement, the parties jointly recommended a withheld sentence, instead placing him on probation for three years, with Friedlander serving eight months' jail time as a condition of his probation, to run concurrent with Friedlander's then-existing prison sentence.[3] Consequently, most of the eight months of conditional time would be served while he was in prison. However, at the time of sentencing, a detainer[4] was placed on Friedlander so that if released from prison, he would be transferred to jail to serve the remainder of his conditional time.

¶5 The same day that Friedlander pled no contest, the circuit court adopted the parties' joint recommendation and ordered that the conditional jail time would start immediately

---

[3] At the time, Friedlander was already serving a prison sentence at the Oshkosh Correctional Institution for a prior conviction for possession with intent to manufacture or deliver heroin——a class F felony under Wis. Stat. § 961.41(1)(d)1. See State v. Friedlander, Jefferson County case number 2014CF212.

[4] "Detainer" is not defined by statute, but this court has defined "detainer" as "a 'notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" State v. Eesley, 225 Wis. 2d 248, 257-58, 591 N.W.2d 846 (1999) (citing United States v. Mauro, 436 U.S. 340, 359 (1978)).

and run concurrently with the prison sentence Friedlander was already serving for the unrelated offense. The circuit court specified on the record that once Friedlander's prison sentence had been completed, he would still be required to serve the remainder of his conditional jail time. Additionally, the circuit court noted that because the jail time was a condition of probation, it was not a sentence. As a result, the circuit court stated that there was a question as to where the Department of Corrections ("DOC") would have Friedlander serve the remainder of his conditional jail time.

¶6 On September 27, 2016, Friedlander finished serving his prison sentence on the unrelated drug offense but still had 75 days of his conditional time to serve on the offense now before this court. However, instead of being transported according to the detainer to serve his remaining conditional time in jail, he was mistakenly released by the authorities from the Oshkosh Correctional Institution. Officials at the Oshkosh Correctional Institution failed to notify the Jefferson County jail of Friedlander's release and did not arrange to transfer Friedlander to the Jefferson County jail.

¶7 Friedlander met with his probation agent immediately after being released. The probation agent did not tell Friedlander that he needed to report to jail. Friedlander met with his probation agent again and was not told anything about reporting to jail. Friedlander's probation agent did not contact the circuit court to request clarification regarding his conditional jail time.

4

¶8 On November 11, 2016, the Jefferson County sheriff's office learned from the county's child support agency that Friedlander had been released from prison. That same day the sheriff's office contacted Friedlander's probation agent. Friedlander's probation agent then spoke with Friedlander, telling him to contact Captain Duane Scott ("Captain Scott") in the sheriff's office. Friedlander did so and reported to Captain Scott that a social worker at the Oshkosh Correctional Institution had told him his conditional jail time was completed prior to his release from prison. Captain Scott then contacted a DOC staff member who said that Friedlander's probation agent should have taken him to the Jefferson County jail on September 27, 2016. On November 23, 2016, Captain Scott wrote the circuit court summarizing these recent events and asking the circuit court whether Friedlander should report to serve his conditional time and, if so, what should be done regarding the days he was not in jail.

¶9 On December 1, 2016, the circuit court held a hearing to determine how to proceed regarding Friedlander's unserved portion of his conditional jail time. The circuit court found that Friedlander had served 165 days of the eight months, or 240 days, of conditional jail time. The circuit court determined that Friedlander had 75 days of conditional jail time remaining that he needed to serve. The circuit court then considered whether Friedlander was entitled to sentence credit for the 65 days that elapsed between Friedlander's release on September 27, 2016, and the date of the hearing. If granted sentence credit

5

for all 65 days between September 27, 2016, and December 1, 2016, Friedlander would have only 10 days of conditional jail time remaining under the terms of his probation.

¶10 Friedlander argued that he should be entitled to sentence credit for the 65 days he was not in jail following his release from the Oshkosh Correctional Institution. Citing Riske and Dentici, Friedlander claimed that he should receive a 65-day sentence credit because he was at liberty through no fault of his own, leaving 10 days remaining on Friedlander's conditional jail term. The State made no argument regarding Friedlander's claim for a 65-day sentence credit.

¶11 After hearing testimony from a deputy at the Jefferson County jail and Friedlander, the circuit court concluded that Friedlander was not entitled to a 65-day sentence credit for the time he was not in jail following his release from prison on September 27, 2016. The circuit court distinguished Riske and Dentici, stating that in those cases the defendants reported to jail and were turned away due to overcrowding. The circuit court concluded that Friedlander should have reported to jail like the defendants in Riske and Dentici, or at least sought clarification from the circuit court. Since Friedlander did neither the circuit court concluded that under Riske and Dentici Friedlander was not entitled to sentence credit for any of the time he was not in jail following his release from prison. The circuit court did not reference Magnuson in its decision.

¶12 As a result, the circuit court ordered Friedlander to begin serving the remainder of his conditional jail time. On

6

December 9, 2016, Friedlander filed a motion for stay of his confinement pending appellate review of the circuit court's sentence credit determination. On December 12, 2016, the circuit court denied Friedlander's motion to stay. Friedlander then filed a petition for leave to appeal, which the court of appeals denied on January 10, 2017.

¶13 On July 6, 2017, Friedlander filed a notice of appeal. Though he conceded that defendants normally must be "in custody" to receive sentence credit under Wis. Stat. § 973.155, he argued that under Riske and Dentici, time spent at liberty satisfies the "in custody" requirement because Friedlander was released from custody due to an administrative error and thus through no fault of his own. The State argued that Friedlander was not "in custody" under § 973.155 and pursuant to this court's decision in Magnuson. The State further asserted that Riske and Dentici did not apply. Alternatively, the State argued that Friedlander was not, in fact, at liberty through no fault of his own, as Friedlander knew he had time to serve but did not report to jail nor seek clarification regarding his conditional jail time.

¶14 On April 12, 2018, the court of appeals issued an unpublished, per curiam opinion. Friedlander, No. 2017AP1337-CR. The court of appeals agreed with Friedlander and reversed the circuit court, remanding the matter with directions to amend Friedlander's judgment of conviction to reflect an additional 65 days of sentence credit in the event Friedlander's probation was revoked and his sentence was imposed. Id., ¶1. The court of appeals relied on Riske and Dentici, not Magnuson, and reasoned

7

that "Friedlander was at liberty between the date that he was released from prison and the date he was remanded to jail, not through any fault of his own but through the fault of government officials." Id., ¶19. Therefore, the court of appeals concluded that Friedlander was entitled to 65 days of sentence credit. Id.

¶15 Addressing the State's arguments, the court of appeals first rejected the State's attempts to distinguish Riske and Dentici, holding that it would be unfair to Friedlander to require him to serve the 65 days since he was at liberty due to the government's mistake. Id., ¶¶21-24. Second, the court of appeals asserted that the State selectively quoted Magnuson to suggest that the escape statute, Wis. Stat. § 946.42(1)(a), is the exclusive means to determine whether a defendant is in custody. Id., ¶¶25-26. The court of appeals also distinguished Magnuson because there was no fault-related issue raised in Magnuson. Id., ¶27. Thus, the court of appeals relied on its decisions in Riske and Dentici, resolving that they existed in harmony with Magnuson, to conclude that Friedlander was entitled to 65 days of sentence credit. See id., ¶¶26-28.

¶16 On May 14, 2018, the State filed a petition for review in this court. On July 10, 2018, we granted the petition.

## II. STANDARD OF REVIEW

¶17 This case requires the interpretation of the sentence credit statute, Wis. Stat. § 973.155, to determine the meaning of "in custody" for sentence credit purposes. "The interpretation and application of a statute presents questions

of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346 (citing State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238). Therefore, because there are no disputed facts in this case, we review de novo when a defendant is "in custody" within the context of a sentence credit determination.

¶18 "[S]tare decisis concerns are paramount where a court has authoritatively interpreted a statute because the legislature remains free to alter its construction." Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶45, 281 Wis. 2d 300, 697 N.W.2d 417 (citing Hilton v. S.C. Pub. Rys. Comm'n, 502 U.S. 197, 202 (1991)). "When a party asks this court to overturn a prior interpretation of a statute, it is his 'burden . . . to show not only that [the decision] was mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it.'" Id.

### III. ANALYSIS

#### A. Statutory Interpretation

¶19 Wisconsin's statutes reflect the legislature's policy determination with respect to sentence credit determinations. As a result, we begin our analysis with the language of the relevant statute, Wis. Stat. § 973.155. See State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." Id., ¶44.

If the meaning of the statute is plain, we ordinarily stop the inquiry and give the language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id., ¶45.

¶20 Context and structure of a statute are important to the meaning of the statute. Id., ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. Moreover, the "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes——that is, from its context or the structure of the statute as a coherent whole." Id., ¶49.

¶21 "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id., ¶46. If statutory language is unambiguous, we do not need to consult extrinsic sources of interpretation. Id. "Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity." Id., ¶47.

¶22 As this court discussed in Magnuson, Wis. Stat. § 973.155 governs when a defendant is entitled to receive sentence credit. Magnuson, 233 Wis. 2d 40, ¶12. Under Wis.

10

Stat. § 973.155, "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." § 973.155(1)(a). The statute defines "days spent in custody" as "confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct." Id. Additionally, under § 973.155(1)(a), confinement occurs: (1) "[w]hile the offender is awaiting trial"; (2) "[w]hile the offender is being tried"; and (3) "[w]hile the offender is awaiting imposition of sentence after trial." § 973.155(1)(a)1.-3. Under § 973.155(1)(b),

> [t]he categories in par. (a) . . . include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole . . . placed upon the person for the same course of conduct as that resulting in the new conviction.

¶23 Thus the plain meaning of Wis. Stat. § 973.155 reflects the legislative determination that for sentence credit to be awarded: (1) the defendant must show that the defendant was "in custody"; and (2) the defendant must show that "the custody 'was in connection with the course of conduct for which the sentence was imposed.'" Wis. Stat. § 973.155(1)(a); see also State v. Johnson, 2007 WI 107, ¶31, 304 Wis. 2d 318, 735 N.W.2d 505 (quoting State v. Gavigan, 122 Wis. 2d 389, 391, 362 N.W.2d 162 (Ct. App. 1984)). Notably, the term "in custody" is not defined anywhere in the statutes. The parties dispute only whether Friedlander was actually "in custody" for the purposes

11

of the sentence credit between September 27, 2016, and December 1, 2016. They do not debate whether, if Friedlander was "in custody," it was in connection with the course of conduct for which any sentence was imposed. We therefore turn to our prior case law to determine the meaning of "in custody" for sentence credit purposes. If Friedlander was not "in custody" he is not statutorily due sentence credit.

### B. Riske, Magnuson, and Dentici

¶24 While the parties agree that Wis. Stat. § 973.155 controls, they disagree as to when a defendant is "in custody" such that the defendant should receive sentence credit. The State argues that this court's holding in Magnuson should control, meaning that a defendant is "in custody" for sentence credit purposes whenever the defendant would be subject to an escape charge. The State thus urges this court to overrule the court of appeals' decisions in Riske and Dentici. Friedlander claims that Riske, Dentici, and Magnuson all coexist harmoniously such that Riske and Dentici should not be overruled. Accordingly, Friedlander claims that a defendant is entitled to sentence credit because the defendant "could have been charged with escape had they intentionally escaped from their time spent at liberty from a court's confinement order through no fault of their own." We agree with the State, and in the interest of providing clarity, overrule Riske, decided before, and Dentici, decided after, Magnuson.

### 1. Riske

¶25 In Riske, the court of appeals concluded that the defendant was entitled to sentence credit without even considering the sentence credit statute. There, the defendant was sentenced on April 6, 1987, to one year in jail after pleading no contest to sexual intercourse with a minor. Riske, 152 Wis. 2d at 262. The defendant surrendered to the county jail the same day he was sentenced, but the jailer told the defendant that the jail was full. Id. Therefore, the jailer told the defendant to return on May 1, 1987. Id. The defendant failed to report back to the county jail on May 1, 1987, and remained at large until April 14, 1988, when the circuit court issued an execution for the defendant's arrest. Id. While the defendant remained at large, he lived and worked in the community, and made no attempt to hide. Id.

¶26 Following his arrest in 1988, the circuit court concluded that the defendant would have begun serving his sentence on May 1, 1987, but that the defendant did not begin serving his sentence on that date of his own doing. Id. Therefore, the circuit court held that the defendant was not entitled to sentence credit for the time he was not in jail on and after May 1, 1987. See id.

¶27 The defendant appealed, claiming that his one-year sentence had completely run at the time of his 1988 arrest and that he should therefore be entitled to sentence credit. Id. at 263. The State conceded that the defendant should be given sentence credit for the time he was out of jail between April 6

13

and May 1, 1987, as the defendant reported to the jail and was turned away because the jail was full.[5] Id. However, the State argued that the defendant "escaped" by failing to return to the county jail on May 1, 1987. Id. at 265. Citing Wis. Stat. § 973.15(7) (1987-88), the State asserted that the defendant was not entitled to sentence credit for any time the defendant was at large on or after May 1, 1987.[6] Id.

¶28 The court of appeals reversed the circuit court in part and remanded with directions to give the defendant sentence credit for the time he was at large between April 6 and May 1, 1987. Id. Relying on a decision issued by the United States Court of Appeals for the Tenth Circuit nearly 60 years prior, the court of appeals reasoned that "[s]entences are continuous" in nature, unless they are "interrupted by escape, violation of parole, or some fault of the prisoner." Id. at 264. The court of appeals then stated, "'[W]here a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, . . . his sentence continues to run while he is at liberty.'" Id. (quoting White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930)).

---

[5] The State now asserts that its concession in State v. Riske, 152 Wis. 2d 260, 448 N.W.2d 260 (Ct. App. 1989), was made in error.

[6] The 2015-16 version of Wis. Stat. § 973.15(7), which is identical to the 1987-88 version the court of appeals cited in Riske, states, "If a convicted offender escapes, the time during which he or she is unlawfully at large after escape shall not be computed as service of the sentence."

14

As additional support, the court of appeals noted a decision issued by this court in 1884, along with an Attorney General Opinion issued in 1925.  Id. at 264-65 (citing In re Crow: Habeas Corpus, 60 Wis. 349, 370, 19 N.W. 713 (1884); 14 Op. Att'y Gen. 512 (1925)).  The court of appeals then refused to determine whether the defendant "escaped," instead relying on what it described as the "broader principle" codified by Wis. Stat. § 973.15(7):  "that a person's sentence for a crime will be credited for the time he was at liberty through no fault of the person."  Riske, 152 Wis. 2d at 265.  At no point did the court of appeals reference or discuss Wis. Stat. § 973.155.

### 2.  Magnuson

¶29  This court was thereafter faced with a sentence credit issue in Magnuson.  There, the defendant was charged with eight counts of securities fraud.  Magnuson, 233 Wis. 2d 40, ¶2.  The circuit court set bail at $12,000 per count for a total of $96,000.  Id.  The defendant was unable to post bail and remained in jail.  Id.  As trial preparation ensued, the defendant moved for bail modification and reduction.  Id., ¶3. The circuit court granted the motion and modified bail to a $10,000 signature bond, requiring that others co-sign the bond. Id., ¶4.  As part of the bond, the circuit court required the defendant to reside with one of the co-signers of the bond.  Id. Additionally, the circuit court imposed a nightly curfew on the defendant, confining the defendant to his chosen co-signer's residence between 7:00 p.m. and 7:00 a.m.  Id., ¶5.  The circuit court subsequently modified the bond to slightly reduce the

15

daily period of confinement to allow the defendant to participate in substance abuse counseling and attend church activities. Id. The defendant was formally supervised by a bail monitoring program and was forced to wear an electronic monitoring bracelet. Id., ¶6. Further, the defendant had to contact bail monitoring authorities each morning, submit to urine testing, and have weekly face-to-face contact with authorities. Id., ¶7.

¶30 The defendant was released on bond on June 12, 1996, and later pled no contest to three counts of securities fraud. Id., ¶8. The defendant remained under his chosen co-signer's care until December 11, 1996, when his co-signer reported to authorities that he disapproved of the defendant's conduct. Id. The defendant was returned to jail the following day. Id.

¶31 The circuit court sentenced the defendant to eight years of imprisonment followed by seven years of probation and granted 229 days of sentence credit for time the defendant spent in jail. Id., ¶9. The defendant then filed a postconviction motion seeking sentence credit for the 183 days he stayed with his bond co-signer as a condition of his bond. Id. The circuit court denied the defendant's motion, concluding that his detention at his co-signer's home with electronic monitoring as a condition of bond was not "custody" for sentence credit purposes. Id.

¶32 The defendant appealed the denial of sentence credit. Id., ¶10. The court of appeals reversed the circuit court, holding that the defendant was entitled to sentence credit for

16

the time he was under home detention with electronic monitoring. Id., ¶10. In reaching its holding, the court of appeals applied a test set forth in State v. Collett, 207 Wis. 2d 319, 558 N.W.2d 642 (Ct. App. 1996), where the court of appeals adopted a case-by-case analysis for determining whether a defendant was in custody for sentence credit purposes. Magnuson, 233 Wis. 2d 40, ¶10. Under the Collett test, the court of appeals concluded that the bond conditions were restrictive enough such that they were the "functional equivalent of confinement." Id. Therefore, the court of appeals concluded that the defendant was entitled to sentence credit for the time he was required to stay at his co-signer's residence. See id.

¶33 Citing the need for judicial economy and consistency, this court reversed the court of appeals, establishing a "bright-line" rule and abandoning the Collett test. See id., ¶¶10, 22. Unlike the court of appeals in Riske, this court began with Wis. Stat. § 973.155, noting that the plain language of the statute did not expressly define custody. Magnuson, 233 Wis. 2d 40, ¶13. However, we noted that "numerous cases have interpreted the sentence credit statute and concluded that the plain meaning of custody under the statute corresponds to the definition of custody contained in the escape statute, Wis. Stat. § 946.42." Id. Therefore, we held "that for sentence credit purposes an offender's status constitutes custody whenever the offender is subject to an escape charge for leaving

17

that status," referencing § 946.42(1)(a).[7]   Id., ¶¶25-26. However, this court did not restrict the inquiry to the

---

[7] The 2015-16 version of Wis. Stat. § 946.42, which is substantially similar to the version this court considered in State v. Magnuson, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536, states that "custody" includes without limitation all of the following:

a.   Actual custody of an institution, including a juvenile correctional facility, as defined in s. 938.02(10p), a secured residential care center for children and youth, as defined in s. 938.02(15g), a juvenile detention facility, as defined in s. 938.02(10r), a Type 2 residential care center for children and youth, as defined in s. 938.02(19r), a facility used for the detention of persons detained under s. 980.04(1), a facility specified in s. 980.065, or a juvenile portion of a county jail.

b.   Actual custody of a peace officer or institution guard.

bm.   Actual custody or authorized physical control of a correctional officer.

c.   Actual custody or authorized physical control of a probationer, parolee, or person on extended supervision by the department of corrections.

e.   Constructive custody of persons placed on supervised release under ch. 980.

f.   Constructive custody of prisoners and juveniles subject to an order under s. 938.183, 938.34(4d), (4h), or (4m), or 938.357(4) or (5)(e) temporarily outside the institution whether for the purpose of work, school, medical care, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile, or otherwise.

g.   Custody of the sheriff of the county to which the prisoner was transferred after conviction.

(continued)

18

definition of "custody" contained in § 946.42(1)(a), emphasizing the need to read statutes in pari materia and referring to three statutes in which the legislature "classified certain situations as restrictive and custodial by attaching escape charges for an unauthorized departure from those situations."[8] Id.

¶34 Applying its new bright-line rule in Magnuson, this court held that the defendant was not entitled to sentence credit for the time he was on electronically-monitored home detention as a condition of his bond release. Id., ¶32. Specifically, we concluded that the release conditions of the defendant's bond did not subject the defendant to an escape charge under any pertinent statute. Id. This court further concluded that the defendant was not part of a program that included statutorily-proscribed escape charges for certain violations. Id., ¶¶33-36. Additionally, this court stated that simply having bond conditions similar to requirements under a confinement or treatment program did not render the defendant a participant within any such program for sentence credit

---

h. Custody of a person subject to a confinement order under s. 973.09(4).

§ 946.42(1)(a)1.

[8] Specifically, this court referenced Wis. Stat. §§ 301.046 ("Community residential confinement."), 301.048 ("Intensive sanctions program."), and 302.425 ("Home detention programs."). Magnuson, 233 Wis. 2d 40, ¶¶28-30. All three statutes expressly provide that unauthorized flight from or failure to comply with the programs constitutes an escape. See id.

purposes, expressing its aversion for "a rule for determining custody as amorphous as the Collett test." Id., ¶35.

¶35 This court then considered whether the defendant was "in custody" under the escape statute, Wis. Stat. § 946.42. Magnuson, 233 Wis. 2d 40, ¶¶39-46. In analyzing § 946.42(1)(a), this court first concluded that the defendant was not in actual custody under § 946.42(1)(a), as he was not in the custody of an institution, secured correctional facility, secure detention facility, a peace officer, or an institutional guard. Id., ¶40. Next, this court concluded that the defendant was not under constructive custody within the meaning of § 946.42(1)(a). Id., ¶41. This court noted that constructive custody included "temporary leave for the purpose of work, school, medical care, or otherwise," and concluded that the defendant's bond conditions did not equate to "a temporary release for any of the specified purposes." Id.

¶36 Therefore, since the defendant would have been subject to a bail-jumping charge only for violating the conditions of his bond, this court concluded that he was not in danger of being charged with escape and thus was not eligible to receive sentence credit for the time he spent under home detention. Id., ¶46. Notably, this court did not address Riske nor did it espouse any lack-of-fault requirement like the court of appeals in Riske. This court, however, did not specifically overrule Riske.

20

### 3. Dentici

¶37 Two years after this court's decision in Magnuson, the court of appeals was again faced with a sentence credit issue in Dentici. There, on February 3, 1997, the defendant pled guilty to operating a vehicle without the owner's consent and was placed on probation. Dentici, 251 Wis. 2d 436, ¶2. As a condition of probation, the circuit court ordered the defendant to serve 60 days in jail. Id. When the defendant reported to the jail the same day he was sentenced, he was informed that the jail was overcrowded and that he should return on February 28, 1997. Id. The defendant returned on February 28, 1997, and was released on May 13, 1997. Id. On February 5, 1998, the defendant's probation was revoked, and the defendant was sentenced to two years of imprisonment. Id., ¶3. The defendant filed a series of motions with the circuit court in part seeking sentence credit for the 25 days he was not in jail between February 3 and February 28, 1997, because of overcrowding. Id. The circuit court denied the defendant's motion for the 25 days of sentence credit, and the defendant appealed. Id.

¶38 The court of appeals reversed the circuit court, concluding that the defendant was entitled to sentence credit for the 25 days elapsing between February 3 and February 28, 1997. Id., ¶13. Specifically, the court of appeals concluded that: (1) the definition of "custody" is not limited to the definition provided in Wis. Stat. § 946.42(1)(a) (1999-2000); (2) under Riske and Wis. Stat. § 973.15(7), a defendant is in custody while at liberty through no fault of his or her own due

21

to overcrowding; and (3) the defendant would have been subject to an escape charge for violating any of the conditions of his constructive custody. Dentici, 251 Wis. 2d 436, ¶13. In reaching its holding, the court of appeals compared the defendant's situation to that of the defendant in State v. Sevelin, 204 Wis. 2d 127, 554 N.W.2d 521 (Ct. App. 1996).[9] Dentici, 251 Wis. 2d 436, ¶11. The court of appeals concluded that like Sevelin, Dentici "was granted leave for a temporary period of time, [25] days, and was required to return on a specified date." Id. Additionally, the court of appeals considered the defendant's "leave" from jail to be similar to leave granted under Wis. Stat. § 303.068 (1999-2000), concluding that the defendant was in constructive custody, as he was temporarily outside of jail for a purpose that would be covered by the "or otherwise" language of § 946.42(1)(a)1.f. Dentici, 251 Wis. 2d 436, ¶12. Therefore, the court of appeals reasoned that the defendant would have been subject to an escape charge for not returning to the jail on February 28, 1997. Id.

---

[9] In Sevelin, which was decided before Magnuson, the circuit court granted the defendant a "furlough" to attend an inpatient treatment facility. State v. Sevelin, 204 Wis. 2d 127, 130, 554 N.W.2d 521 (Ct. App. 1996). Sevelin signed "an authorization so that the [circuit] court could obtain information from the facility about his progress and whether he had left the [treatment facility]. The [circuit] court warned Sevelin that if he left the [treatment facility] for any reason, he would have to return to jail immediately." Id. Unlike Freidlander, Sevelin sought credit for this time in treatment. Id. at 133.

22

¶39 Apparently recognizing a need to square its holding with Magnuson, the court of appeals in Dentici attempted to harmonize Riske and Magnuson, claiming that "the Riske definition of custody coexists with the Magnuson definition." Id., ¶13. In the ensuing discussion, the court of appeals cited Magnuson for only this court's statement that Wis. Stat. § 946.42(1)(a) is not the exclusive definition of "in custody" for sentence credit purposes, and that the statutes should be read in pari materia. Dentici, 251 Wis. 2d 436, ¶13. The court of appeals then relied on Riske, stating that under Wis. Stat. § 973.15(7), "custody" included the time that defendants are at liberty through no fault of their own. Id. The court of appeals thus concluded that the defendant would have been subject to an escape charge for violating any of the conditions of his constructive custody. Id.

¶40 Judge Ralph Adam Fine authored a persuasive dissent to the majority's opinion in Dentici. He emphasized that "Magnuson established a bright-line rule to determine when a person is in 'custody' for sentence-credit purposes: a person is in 'custody' if he or she is 'subject to an escape charge for leaving that status.'" Id., ¶15 (Fine, J. dissenting) (citing Magnuson, 233 Wis. 2d 40, ¶31). Judge Fine further stated, "The Majority does not tell us under what provision of law, or under what circumstances, Dentici could have been guilty of "escape" before the date he had to report to the [jail], and I am aware of none . . . ." Id. (Fine, J. dissenting). As Judge Fine aptly concluded, the defendant in Dentici "was free——'escape

23

from freedom' is not yet a crime." Id. (Fine, J. dissenting). Additionally, Judge Fine noted that the defendant was not "sentenced" to incarceration as he was ordered to serve jail time as a condition of probation, not as a sentence. Id., ¶16 (Fine, J. dissenting) (citing Prue v. State, 63 Wis. 2d 109, 114, 216 N.W.2d 43 (1974) (stating that "probation is not a sentence")). Judge Fine concluded that the court of appeals was "bound by Magnuson," not Riske. Id. (Fine, J. dissenting).

¶41 As Judge Fine correctly discussed in his dissent, the court of appeals' holding in Dentici is fundamentally problematic. The court of appeals modified the bright-line rule established in Magnuson, effectively bootstrapping the Riske standard to the rule we set forth in Magnuson. This court did not state in Magnuson that a defendant who is at liberty through no fault of his or her own is "in custody" and thus entitled to sentence credit. Indeed, that was not part of the analysis. Rather, we held that a defendant who is subject to an escape charge for leaving his or her status is "in custody" for sentence credit purposes. Certainly, our rule in Magnuson would not be as "bright-line" as we indicated if we silently incorporated the court of appeals' test in Riske as a latent part of the analysis, leaving courts to engage in a guessing game regarding the proper standard.

¶42 Therefore, today we clarify and overrule Riske and Dentici in favor of our bright-line rule set forth in Magnuson. We disavow the Riske and Dentici adoption of a common-law rule to award sentence credit especially given the legislature's

24

enactment of a comprehensive statutory method to address sentence credit. When determining whether a defendant is "in custody" for the purposes of sentence credit under Wis. Stat. § 973.155, we look to whether the defendant is subject to an escape charge for leaving the defendant's status. In determining whether an escape charge could lie, we generally turn to the escape statute, Wis. Stat. § 946.42. However, whether a defendant is subject to an escape charge for leaving his status may also be informed by other statutes which expressly provide for escape charges for violation of the statute, such as Wis. Stat. §§ 301.046 ("Community residential confinement."), 301.048 ("Intensive sanctions program."), and 302.425 ("Home detention programs."). However, such statutes are relevant only for consideration for sentence credit purposes where a defendant is actually a participant in the programs governed by those statutes.[10] Whether a defendant is at liberty

---

[10] For example, Wis. Stat. § 301.046 creates a "[c]ommunity residential confinement" program, which provides that under the program, the DOC "shall confine prisoners in their places of residence or other places designated by the department." § 301.046(1). Subsection (6), which is titled "Escape," states, "Any intentional failure of a prisoner to remain within the extended limits of his or her confinement or to return within the time prescribed by the superintendent is considered an escape under s. 946.42(3)(a)." § 301.046(6). As Friedlander was not under any such statutorily-created program, much less one that provides for an escape charge if the terms of the program are violated, we need not consider any statute outside of Wis. Stat. § 946.42 in determining whether Friedlander would be subject to an escape charge during his time at liberty.

25

through no fault of that defendant is irrelevant to a sentence credit determination.

### C.  Under Magnuson, Friedlander Is Not Entitled To Sentence Credit.

¶43 Having determined the proper standard for evaluating whether a defendant is entitled to sentence credit under Wis. Stat. § 973.155, we now turn to whether Friedlander is entitled to sentence credit for the time he spent at liberty from September 27, 2016, through December 1, 2016.  The State argues that under Magnuson and Wis. Stat. § 946.42(1)(a)2., Friedlander is not entitled to sentence credit for his time spent at liberty because he was merely on probation and could not have been charged with escape for leaving that status.[11]  Friedlander claims that even upon an overruling of Riske and Dentici, he is entitled to sentence credit on equitable principles since he was at liberty through no fault of his own.  We disagree.

¶44 Friedlander argues that despite the statute, we should award sentence credit for equitable reasons.  Courts, however, should be most hesitant to adopt judicially created remedies when the legislature, the primary policymaker, has statutorily

---

[11] Wisconsin Stat. § 946.42(1)(a)2. states as follows:

"Custody" does not include the constructive custody of a probationer, parolee, or person on extended supervision by the department of corrections or a probation, extended supervision, or parole agent or, subject to s. 938.533(3)(a), the constructive custody of a person who has been released to community supervision or aftercare supervision under ch. 938 (emphasis added).

26

addressed the topic. Here, we defer to those policy choices. Cf. Black v. City of Milwaukee, 2016 WI 47, ¶30, 369 Wis. 2d 272, 882 N.W.2d 333. Moreover, Friedlander offers little to explain how the sentence credit he seeks is anything but a windfall. He seeks credit for time he spent at liberty even though the circuit court here found that he knew he was sentenced to serve additional time.

¶45 Under the rule we established in Magnuson and reaffirm today, Friedlander was not in custody between September 27, 2016, and December 1, 2016, and is not entitled to sentence credit. Our analysis is straightforward and consistent with Magnuson. In order to receive sentence credit under Wis. Stat. § 973.155, Friedlander must have been "in custody." Under Wis. Stat. § 946.42(1)(a), custody can either be actual or constructive. Crucially however, the escape statute is clear that "custody" does not include constructive custody of a defendant on probation or extended supervision. See § 946.42(1)(a)2.

¶46 Here, Friedlander does not contend that he was in actual custody between September 27 and December 1, 2016. Therefore, Friedlander could be entitled to sentence credit for the 65 days at issue only if he was under constructive custody within the meaning of Wis. Stat. § 946.42(1)(a). He was not. Unlike the defendant in Magnuson, who was under a bail monitoring program and awaiting sentencing, Friedlander was on probation between September 27 and December 1, 2016. Since Friedlander was merely on probation during those 65 days, under

27

§ 946.42(1)(a)2., Friedlander could not have been in "custody." As a result, like the defendant in <u>Magnuson</u>, Friedlander is not entitled to 65 days sentence credit.

¶47 Friedlander's reliance on equitable principles is unpersuasive.[12] In arguing equitable principles, Friedlander in large part simply restates the rationale the court of appeals

---

[12] Unfortunately, mistaken early release is somewhat common. <u>See e.g.</u>, Monique Garcia, <u>Gov. Pat Quinn admits mistake on early-release of prisoners, blames corrections chief</u>, Chicago Tribune, Dec. 31, 2009, https://www.chicagotribune.com/news/ct-xpm-2009-12-31-chi-quinn-parole-program-31dec31-story.html; Kevin Johnson, <u>Federal prison errors cause mistaken releases</u>, USA Today, May 24, 2016, https://www.usatoday.com/story/news/nation/2016/05/24/federal-prison-errors-mistaken-releases/84851378/; Kendra Alleyne, <u>Computer Glitch Causes Mistaken Early Release of More Than 3,000 Inmates</u>, Campbell Law Observer, Jan. 11, 2016, http://campbelllawobserver.com/computer-glitch-causes-mistaken-early-release-of-more-than-3000-inmates/; John Guidry II, <u>Florida Prison's Mistaken/Accidental Early Release Programs</u>, Orlando Criminal Defense Blog, Jan. 1, 2011, https://www.orlandocriminaldefenseattorneyblog.com/florida-prisons-mistakenaccide/; Associated Press, <u>Jail inmate mistakenly released instead of shipped to prison</u>, The Post and Courier, Jun. 5, 2017, https://www.postandcourier.com/news/a-south-carolina-jail-inmate-was-mistakenly-released-instead-of/article_1ab5db32-494f-11e7-b226-b3c803f08d6e.html.

We recognize that after being mistakenly released, some federal and state courts have granted defendants sentence credit, but other federal and state courts have not. Some courts have awarded sentence credit based upon considerations of equity, substantive due process, estoppel, common law, or other policy. While it might be tempting to pick and choose a case from another jurisdiction to lend support for granting or not granting sentence credit, that exercise is of little value without also considering the facts and law underlying that decision. Instead of turning to other jurisdictions for guidance, we rely upon Wisconsin's comprehensive sentence credit statutes, <u>Magnuson</u>, and our escape statute, Wis. Stat. § 946.42.

relied upon in <u>Riske</u>, which we overrule.  As Friedlander correctly notes, the sentence credit statute is "designed to prevent a defendant from serving more time than his sentence or his sentences call for."  <u>State v. Johnson</u>, 2009 WI 57, ¶31, 318 Wis. 2d 21,  767  N.W.2d 207  (citing  <u>State  v.  Beets</u>,  124 Wis. 2d 372,  379,  369  N.W.2d 382  (1985)).  Here, however, Friedlander does not argue that disallowing sentence credit for the 65 days he was at liberty would somehow require him to serve more time than given by the circuit court.  Indeed, Friedlander at this point has served the entirety of the eight months of conditional jail time called for as part of his probation, which was notably the result of a <u>joint</u> recommendation to the circuit court by both the State and Friedlander's counsel.  Friedlander thus seeks a sentence credit presumably that would apply to a sentence if probation were revoked and result in frustrating the circuit court's sentence because he would then be subject to less than the prescribed amount of time.[13]  Our holding today

---

[13] As discussed previously, Friedlander's eight months of conditional jail time was a condition of probation.  We acknowledge that individuals who are deemed to be in custody would nonetheless receive credit for the time in custody even if that time is served as a condition of probation.  Wis. Stat. § 946.42.  We also acknowledge that probation is not a sentence. <u>See</u> <u>Prue v. State</u>, 63 Wis. 2d 109, 114, 216 N.W.2d 43 (1974) (stating that "probation is not a sentence").  Even considering the language Friedlander quotes from <u>State v. Johnson</u>, 2009 WI 57, 318 Wis. 2d 21, 767 N.W.2d 207, his situation is inapposite, as Friedlander was on probation between September 27 and December 1, 2016, but he was released to freedom instead of serving his court-ordered time in custody.

29

does not require Friedlander to serve more time in confinement than he was ordered and thus does not violate any sort of equitable principle associated with the sentence credit statute.[14] We cannot condone such a subversion of a judicial officer's determination.

IV. CONCLUSION

¶48 This court is presented with two issues. First, we must determine the meaning of "in custody" under Wis. Stat. § 973.155. In doing so, we consider whether the court of appeals' decisions in Riske, 152 Wis. 2d 260, and Dentici, 251 Wis. 2d 436, are in harmony with this court's decision in Magnuson, 233 Wis. 2d 40. We conclude that for the purpose of receiving sentence credit under § 973.155, a defendant is "in custody" whenever the defendant is subject to an escape charge under Wis. Stat. § 946.42, or another statute which expressly provides for an escape charge, as this court held in Magnuson. In doing so, we overrule the court of appeals' decisions in Riske and Dentici.

¶49 Second, we must determine whether Friedlander is entitled to sentence credit for time he spent at liberty after being mistakenly released from prison without being transferred to serve his remaining conditional jail time. We conclude that Friedlander is not entitled to sentence credit because

---

[14] Friedlander did not raise any arguments regarding his constitutional right to due process. Therefore, we need not consider whether Friedlander's due process rights were violated, and decline to do so.

Friedlander, who was at liberty, could not have been subject to conviction for escape under Wis. Stat. § 946.42.   Thus, we reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶50 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I agree with Justice Ann Walsh Bradley that fundamental principles of fairness support the equitable doctrine of credit for time erroneously spent at liberty.

¶51 I do not join Justice Bradley's dissent because, in my view, the defendant is entitled to sentence credit under the rule announced in State v. Magnuson, 2000 WI 19, 233 Wis. 2d 40, 606 N.W.2d 536.

¶52 In Magnuson, this court held that "an offender's status constitutes custody for sentence credit purposes when the offender is subject to an escape charge for leaving that status."[1] The Magnuson court looked to Wisconsin's escape statute, Wis. Stat. § 946.42(1)(a)1., to determine whether the defendant was in "custody" as defined therein.

¶53 The escape statute provides that "'[c]ustody' includes without limitation all of the following: . . . h. Custody of a person subject to a confinement order under s. 973.09(4)."[2]

---

[1] State v. Magnuson, 2000 WI 19, ¶1, 233 Wis. 2d 40, 606 N.W.2d 536.

[2] Wis. Stat. § 946.42(1)(a)1.h.

The majority appears to conflate the definition of "custody" as provided in subsection h. (i.e., subject to a confinement order under Wis. Stat. § 973.09(4)) with the definition of "custody" in subsection a. (i.e., actual custody in an institution). See majority op., ¶46 n.12.

(continued)

1

¶54 Wisconsin Stat. § 973.09(4) allows a court to require as a condition of probation that the probationer be confined for a period not to exceed one year.

¶55 In the instant case, the defendant was incarcerated in the Oshkosh Correctional Institution as a result of a conviction that is not relevant to resolving the sentence credit issue presented here. In a separate criminal case, the defendant pleaded guilty to bail jumping, and the circuit court ordered that the defendant be confined in the Jefferson County jail for eight months as a condition of his probation. This order constitutes a confinement order under Wis. Stat. § 973.09(4).

¶56 After completing his prison sentence in Oshkosh, the defendant was supposed to be transferred to the county jail to

---

Individuals serving jail time as a condition of their probation per Wis. Stat. § 973.09(4) would be entitled to sentence credit for that time even if subsection h. did not exist because that time would qualify as "custody" under subsection a. That is, the jail time would constitute time spent in the "[a]ctual custody of an institution." Wis. Stat. § 946.42(1)(a)1.a. The majority's contrary reasoning renders subsection h. superfluous.

To the extent the majority relies on Wis. Stat. § 946.42(1)(a)2., that reliance is misplaced. Section 946.42(1)(a)2. specifies that "'[c]ustody' does not include the constructive custody of a probationer . . ." (emphasis added). Probationers serving jail time as a condition of their probation are not in constructive custody. They are in the "[a]ctual custody of an institution" per § 946.42(1)(a)1.a. while serving that conditional jail time. See State v. Zimmerman, 2001 WI App 238, ¶¶13-14, 248 Wis. 2d 370, 635 N.W.2d 864 (providing helpful statutory and legislative history regarding the escape statute's application to probationers).

serve his confinement as a condition of his probation, but instead, he was mistakenly released through no fault of his own.

¶57 In my view, the defendant was still "subject to a confinement order under s. 973.09(4)" upon his mistaken release.[3]

¶58 In the instant case, the defendant was not aware that he was mistakenly released. While mistakenly released, the defendant met with his probation agent as he was required to do. The probation agent did not tell the defendant that he needed to report to jail. However, approximately six weeks after the defendant's mistaken release, the Jefferson County Sheriff's Office discovered that the defendant was mistakenly released from prison. A sergeant from the sheriff's office contacted the defendant's probation agent. The probation agent contacted the defendant, and the defendant promptly cooperated with law enforcement officials in sorting out how to proceed.

¶59 The defendant posits that if he had "left the state or failed to respond to inquiries from his probation agent or law enforcement concerning his court-ordered confinement, he [] could have been charged with escape."

---

[3] See State v. Edwards, 2003 WI App 221, ¶¶20-21, 267 Wis. 2d 491, 671 N.W.2d 371 (explaining that a probationer serving jail time as a condition of his probation who was periodically transferred to a hospital for a medical condition was still in "custody" while at the hospital because he "was subject to a confinement order pursuant to Wis. Stat. § 973.09(4)," but when the circuit court stayed its order for conditional jail time, the probationer was no longer in "custody" because "he was no longer subject to the confinement order during the periods of his hospitalizations").

¶60 I agree. Under the defendant's hypothetical scenario, fleeing the state or failing to respond to inquiries from law enforcement concerning his Wis. Stat. § 973.09(4) confinement order would be persuasive evidence that the defendant intended to avoid complying with the confinement order, and he could be charged with escape.

¶61 Because I conclude that the defendant's status during the time period at issue constituted "custody" for sentence credit purposes, I further conclude that the defendant is entitled to sentence credit under the Magnuson rule.

¶62 Accordingly, I dissent.

¶63 ANN WALSH BRADLEY, J. *(dissenting).* The majority bucks an apparent trend in the law of our sister states and federal circuits that have adopted the equitable doctrine of credit for time erroneously spent at liberty. Paying little mind to the plethora of courts that have adopted the doctrine, it summarily dispatches with Friedlander's invocation of equity.

¶64 In my view, persuasive authority from other jurisdictions and fundamental fairness require a deeper examination of this topic.

¶65 When Friedlander was released from prison, he was told by words and actions that he was free to go. Relying on the information he received from Oshkosh Correctional Institution, where he had been previously incarcerated, he took the Department of Corrections at its word.

¶66 By rejecting the equitable doctrine of credit for time erroneously spent at liberty, the majority inequitably holds Friedlander's reliance on the State against him and allows several state players to escape accountability for their mistakes. Yet, fundamental fairness appears to rest squarely with Friedlander.

¶67 Adopting the doctrine ensures a fair and equitable way to resolve an uncommon factual scenario. Additionally, consistent with case law, it holds the State to its obligation to provide a certain end date for incarceration and prevents the service of a sentence in installments.

¶68 I conclude that Friedlander should receive the benefit of the equitable doctrine of credit for time erroneously spent

1

at liberty. This conclusion is consistent with the sense of fairness and equity embraced by a majority of the federal circuits and an abundance of state courts that have adopted the doctrine and at odds with the sense of fairness and equity tersely espoused by the majority here.

¶69 Accordingly, I respectfully dissent.

I

¶70 The record throughout this case reflects mistakes by the State and some uncertainty on the part of the court. At the outset, the circuit court was unsure as to where the Department of Corrections would have Friedlander serve the conditional jail sentence that remained after his prison sentence was complete. Majority op., ¶5. At sentencing, the circuit court indicated:

> Clearly you'll be serving your sentence when you have a prison sentence and conditional jail in the prison, and that's the Court's expectation, and I doubt that the Department of Corrections will in any way interpret that portion any differently, but it's just a question of once your underlying case is done and if there's still some of this conditional jail time, where they'll have you serve it (emphasis added).

Thus, the circuit court left it to the Department of Corrections to resolve the unanswered question of where it would have Friedlander serve the extra conditional time.

¶71 The uncertainty was resolved when, according to Friedlander, a social worker at Oshkosh Correctional Institution informed him that his conditional jail sentence was satisfied prior to his release. Majority op., ¶8.

¶72 This resolution by the Department of Corrections was underscored when, after completing his prison sentence,

2

Friedlander was released from Oshkosh Correctional Institution instead of being transported to the Jefferson County jail to finish any conditional jail sentence. Id., ¶6. It was further underscored by Oshkosh officials never bothering to notify Jefferson County of Friedlander's release. Id.

¶73 But why would they?

¶74 The sentencing court apparently left to the Department of Corrections the decision as to where the conditional time would be served and they apparently determined it would be served prior to his release from Oshkosh. We now learn, however, that Oshkosh's apparent determination of where Friedlander would serve the extra conditional jail time and their actions supporting that determination were all mistakes.

¶75 To compound the apparently mistaken determination and actions, once Friedlander was released, more mistakes and uncertainty appear.

¶76 Upon his release, Friedlander immediately met with his probation agent. Id., ¶7. At the initial meeting, the agent either did not know or knew but failed to tell him that he needed to report to jail to serve additional time. Id. Friedlander met with his probation agent a second time. Id. Again, the agent failed to tell him to report to jail or in any way indicate that he had additional time to serve. Id. Neither the probation agent nor Friedlander apparently saw a need to contact the circuit court to clarify whether Friedlander had to serve additional time. Id.

3

¶77 The Jefferson County Sheriff's Office eventually was concerned about Friedlander's status and contacted his probation agent, who in turn spoke with Friedlander. Id., ¶8. Friedlander immediately contacted the Jefferson County Sheriff's Office after his probation agent informed him of the issue. Id.

¶78 Friedlander relayed to the sheriff's office what his social worker had told him about his conditional jail sentence being satisfied prior to his release. Id. Unsure how to proceed, the sheriff's office wrote a letter to the circuit court asking how to resolve the situation. Id.

¶79 Similarly unsure how to proceed, the circuit court held a hearing. Id., ¶9. After hearing testimony and argument, it ultimately concluded that under existing law Friedlander is not entitled to sentence credit for his time erroneously spent at liberty. Id., ¶11.

II

¶80 Although I agree with the majority's reliance on State v. Magnuson, 2000 WI 19, ¶47, 233 Wis. 2d 40, 606 N.W.2d 536, I part ways with the majority when it brushes off Friedlander's argument that he should be granted sentence credit pursuant to equitable principles. It spurns the litany of our sister states and federal circuits that have adopted the equitable doctrine of credit for time erroneously spent at liberty. See majority op., ¶47 n.12. In summary fashion, the majority dispenses with Friedlander's invocation of the doctrine. See majority op., ¶¶44, 47. In my view, the majority is incorrect in its summary dismissal of Friedlander's legitimate equitable concerns.

4

¶81 This court has stated that "confinement credit is designed to afford fairness——that a person not serve more time than that for which he is sentenced." State v. Beets, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985). Putting this principle into practice, the Tenth Circuit has determined that "[a] prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape, violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments." White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930) (emphasis added).[1]

---

[1] The Ninth Circuit has further explained:

> The least to which a prisoner is entitled is the execution of the sentence of the court to whose judgment he is duly subject. If a ministerial officer, such as a marshal, charged with the duty to execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner. The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody. Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers. Citation of authority is hardly needed to establish so elementary a proposition.

Smith v. Swope, 91 F.2d 260, 262 (9th Cir. 1937) (citations omitted).

¶82 In the federal courts, this principle has manifested as "a common law rule, which has been held applicable to federal sentencing, that unless interrupted by fault of the prisoner (an escape, for example) a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it." Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994). In practice, this means that "[t]he government is not permitted to delay the expiration of the sentence either by postponing the commencement of the sentence or by releasing the prisoner for a time and then reimprisoning him." Id.

¶83 Such a proposition is embodied by the "doctrine of credit for time erroneously spent at liberty." Pursuant to this doctrine, a convicted person is granted "credit against his sentence for time spent at liberty due to 'simple or mere negligence on behalf of the government' and 'provided the delay in execution of sentence was through no fault [of the convicted person].'" In re Roach, 74 P.3d 134, 137 (Wash. 2003) (citing United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988)).

6

¶84 The vitality of this doctrine has been recognized by a majority of federal circuit courts and an abundance of state courts.[2] Wisconsin should do the same.

¶85 Adopting the equitable doctrine would be consistent with the trend in federal and state courts throughout the country that implicitly reject an assertion that it necessarily results in a windfall for defendants. Indeed, many federal and state courts have "moved away from a strict application of the traditional rule requiring a released prisoner to serve his full sentence no matter the circumstances of his release, and have granted an erroneously released prisoner relief based on

---

[2] See Espinoza v. Sabol, 558 F.3d 83, 90 (1st Cir. 2009); Kiendra v. Hadden, 763 F.2d 69, 72-73 (2d Cir. 1985); Vega v. United States, 493 F.3d 310, 318 (3d Cir. 2007); Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003); United States v. Croft, 450 F.2d 1094, 1097 (6th Cir. 1971); Dunne v. Keohane, 14 F.3d 335, 336-37 (7th Cir. 1994); Green v. Christiansen, 732 F.2d 1397, 1400 (9th Cir. 1984); White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930); McCall v. State, 594 So.2d 733, 734 (Ala. Crim. App. 1992); McKellar v. Arizona State Dep't of Corr., 566 P.2d 1337, 1339-40 (Ariz. 1977); People v. Stark, 902 P.2d 928, 930 (Colo. App. 1995); Drumwright v. State, 572 So.2d 1029, 1031 (Fla. Dist. Ct. App. 1991); Derrer v. Anthony, 463 S.E.2d 690, 693 (Ga. 1995); State v. Kline, 475 So.2d 1093, 1093 (La. 1985) (per curiam); State v. Williams, 410 A.2d 251, 252 (N.J. 1980); People ex rel. Bilotti v. Warden, New York City Corr. Inst. For Men, 345 N.Y.S.2d 584, 585 (N.Y. App. Div. 1973) (per curiam); Jacobs v. Robinson, 410 A.2d 959, 960 (Pa. Commonw. Ct. 1980); Curry v. State, 720 S.W.2d 261, 263-64 (Tex. Ct. App. 1986); In re Roach, 74 P.3d 134, 137 (Wash. 2003); see also Gabriel J. Chin, Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty, 45 Cath. U. L. Rev. 403, 406-10 (1996); Andrew T. Winkler, Implicit in the Concept of Erroneous Liberty: The Need to Ensure Proper Sentence Credit in the Fourth Circuit, 35 N.C. Cent. L. Rev. 1, 11-20 (2012).

principles of equity and fairness." Roach, 74 P.3d at 136 (internal citations omitted).

¶86 The doctrine of credit for time erroneously spent at liberty is a fair and equitable way to resolve an infrequent factual situation. It holds the State to its obligation to provide a certain end date for incarceration and prevents the service of a sentence in installments. "The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community." Dunne, 14 F.3d at 336. Yet the majority is unbothered by the possibility that Friedlander and others similarly situated may face just the type of piecemeal sentence that federal case law instructs us to avoid.

¶87 This case presents the very "cat and mouse" scenario the equitable doctrine is designed to prevent. Mistakes and uncertainty on the part of multiple state actors——the Oshkosh social worker who told Friedlander his sentence was satisfied, the Oshkosh staff who failed to notify Jefferson County of his release, the probation agent who neglected to tell Friedlander to report to jail, the Jefferson County Sheriff's Office that was unsure how to handle the situation, and the circuit court that was similarly unsure how to address the scenario——resulted in the possibility of Friedlander serving a non-continuous sentence.

¶88 Such a sentence served in installments is, as the Seventh Circuit observed in Dunne, detrimental to the

8

reintegration of prisoners back into society. See id. "When courts fail to recognize the doctrine [of credit for time erroneously spent at liberty], erroneously released prisoners who have successfully rehabilitated themselves into society must continually suffer under the auspice that the government may one day require re-incarceration for the service of an unfulfilled sentence." Andrew T. Winkler, Implicit in the Concept of Erroneous Liberty: The Need to Ensure Proper Sentence Credit in the Fourth Circuit, 35 N.C. Cent. L. Rev. 1, 30 (2012).

¶89 Additionally, despite the Department of Corrections, law enforcement, and the circuit court being either mistaken or unsure how to proceed, the majority opines that it is the defendant's responsibility to track his release date. In the majority's view, it is up to Friedlander to tell the State that he may have more time to serve if he is released early through no fault of his own.

¶90 That's easier said than done. Some defendants may have very complex sentences, with overlapping consecutive and concurrent periods of confinement. To expect a defendant to monitor and repeatedly correct the State's math places an untenable and unreasonable responsibility on a defendant——especially when the State indicates by words and actions that he is free.

¶91 In sum, the government, by its words and actions, told Friedlander that he was free and then took it back. Friedlander's rehabilitation and reintegration into society should not be delayed because of the government's errors. He

9

should receive the sentence credit he seeks pursuant to equitable doctrine of credit for time erroneously spent at liberty.

¶92 For the reasons stated above, I respectfully dissent.