COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2019AP691-CR**
**2019AP692-CR**
STATE OF WISCONSIN

Cir. Ct. Nos. 1992CF921195
1999CF163

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CESAR ANTONIO LIRA,

DEFENDANT-APPELLANT.

---

APPEALS from orders of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Blanchard, Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Cesar Antonio Lira appeals the circuit court orders denying his motions for sentence credit on two Wisconsin sentences.[1]  Lira argues that WIS. STAT. § 973.15(5) (2017-18)[2] requires that his sentence be credited with the time he served in the custody of Oklahoma authorities.    Under the interpretation of § 973.15(5) set forth in *State v. Brown*, 2006 WI App 41, 289 Wis. 2d 823, 711 N.W.2d 708, we agree that Lira is eligible for sentence credit for the time he served in Oklahoma prison after Wisconsin legally returned him to Oklahoma custody.   However, Lira has failed to prove that he is entitled to credit for the initial time period he spent in Oklahoma custody after his arrest there for criminal conduct committed in Oklahoma.

¶2     Additionally, Lira requests sentence credit under Wisconsin's traditional sentence credit statutes.  We conclude he is not eligible for presentence credit under WIS. STAT. § 973.155 from the date of his arrest in Oklahoma until sentencing on his Oklahoma criminal charges.  We agree with Lira that he accrued sentence credit for his time in Wisconsin and Texas jails in 2005 and 2006 under WIS. STAT. §§ 304.072 and 973.155 because he was in custody partly related to the 1992 and 1999 cases.  Accordingly, we affirm in part and reverse in part the orders of the circuit court and remand for proceedings consistent with this decision.

---

[1] Lira appeals a denial of sentence credit in Milwaukee County Circuit Court Case Nos. 1992CF921195 and 1999CF163.  For ease of reading we refer to these two cases as the 1992 and 1999 cases.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## BACKGROUND

¶3     This matter arises out of the circuit court's denial of requests for credit against sentences in two Wisconsin drug cases from the 1990s.  The first chapter of Lira's saga begins in Wisconsin.  In 1992, the circuit court sentenced Lira to a ten-year indeterminate sentence for possession of cocaine with intent to deliver in the 1992 case.  He was released on parole in 1996.

¶4     In January 1999, Lira was arrested again on cocaine charges, which resulted in the Department of Corrections (DOC) revoking his parole in the 1992 case.  He was confined to prison again.  In December 1999, the circuit court sentenced Lira on two counts in the 1999 case:  conspiracy to manufacture or deliver cocaine, and possession of a firearm as a felon.  For the cocaine conviction, the circuit court sentenced Lira to a sixteen-year indeterminate prison sentence that was imposed and stayed, and the court placed him on probation for twelve years starting immediately and running concurrent with his revocation sentence in the 1992 case.  On the conviction for felon in possession of firearm, the circuit court sentenced Lira to a two-year indeterminate prison sentence.[3]  The circuit court determined that Lira was entitled to zero days of custody credit on the cocaine charge and twenty-nine days on the firearms charge in that case.

¶5     Lira was released from prison in January 2001, after completing the challenge incarceration program; he remained on parole in the 1992 case and on

---

[3]  Lira asserts that because the judgement of conviction for the firearms charge is silent on the issue whether the sentence was consecutive or concurrent, that sentence was presumably concurrent to the revocation sentence in the 1992 case.  We note that the State does not dispute Lira's position and our review of the record supports this understanding, but because we remand this case to the circuit court for further proceedings consistent with this opinion, we do not address this issue further.

probation in the 1999 case. In November 2002, Lira's parole agent tried to question him about allegations of unauthorized travel to Illinois and possession of approximately $55,000 in cash. Lira fled from the agent. He was not apprehended until he was arrested and taken into custody in Wisconsin in January 2004. He was subsequently charged with endangering safety by use of a dangerous weapon.[4]

¶6  On April 15, 2004, Lira escaped from custody in Milwaukee, which triggered a Wisconsin escape charge against him.[5] The next day started the Oklahoma chapter of Lira's saga. Lira engaged in conduct in Oklahoma on April 16, 2004, that led to his arrest there. Also on that day, Wisconsin placed a detainer on Lira and DOC issued a Revocation Order and Warrant (ROW) in the 1992 and 1999 cases.[6]

¶7  On September 29, 2004, Lira was convicted and sentenced in Oklahoma on four charges, all related to his conduct in Oklahoma after he escaped from Wisconsin: second-degree murder, eluding a police officer, running a roadblock, and child abuse/neglect. He was sentenced to a twenty-year global sentence.

---

[4] Milwaukee County Circuit Court Case No. 2004CM1010.

[5] Milwaukee County Circuit Court Case No. 2004CF2092.

[6] The ROW noted that Lira had been held in jail in Wisconsin from January 9, 2004, through April 15, 2004, entitling him to sentence credit for each of the ninety-seven days he was in custody.

4

¶8      In mid May 2005, Oklahoma sent Lira to Wisconsin to face trial on his outstanding Wisconsin charges.[7]   On June 15, 2005, Lira posted bail in Milwaukee and was released due to a mistake by local authorities.  On December 13, 2005, he was arrested in San Antonio, Texas.  This resulted in a Wisconsin charge of bail jumping.[8]  He was returned to Milwaukee on January 6, 2006.

¶9      Lira entered into a global plea agreement for his outstanding Wisconsin charges for endangering safety by use of a dangerous weapon, escape, and bail jumping on March 17, 2006.  The circuit court sentenced him to six years of imprisonment—bifurcated into three years of initial confinement and three years of extended supervision—to be served consecutively to his Oklahoma sentence.  He received zero days of sentence credit.  On April 5, 2006, Wisconsin returned Lira to Oklahoma, where he resumed serving his Oklahoma sentence.  On June 9, 2017, Lira completed his Oklahoma sentence, and he was returned to Wisconsin prison.

¶10     Turning to Lira's efforts to obtain a sentence credit determination for his periods in custody from 2004 until 2017, he attempted to resolve the issue through an administrative appeal and then by judicial review, in accordance with WIS. STAT. § 973.155(5).  His administrative efforts started in August 2017.  From prison, he wrote to the Division of Adult Institutions, his parole agent, the Fox

---

[7] Lira acknowledges that he was booked into Milwaukee County Jail on May 22, 2005, but he asserts that the circuit court's findings of fact show that he was arrested on May 19, 2005, as part of his extradition from Oklahoma.  Lira asks this court to take judicial notice of these facts.  Because we remand this case to the circuit court for further proceedings consistent with this decision, we will refer to May 2005 as the date of his return to Wisconsin and not address the determination of the exact date of his return to Wisconsin custody.

[8] Milwaukee County Circuit Court Case No. 2005CF6953.

Lake Correctional Institution records supervisor, the Division of Hearing and Appeals, and various DOC officials.[9] In December 2017, Lira received a letter from a DOC regional chief, stating that upon his review, Lira was not entitled to additional credit. Further, it stated, "You may wish to further seek the credit to which you feel you are entitled through the courts."

¶11 Lira's request for sentence credit for April 16, 2004, through October 5, 2004, (from his arrest in Oklahoma until he commenced his prison sentence there) was initially approved by DOC.[10] On August 24, 2017, DOC amended the ROW for the 1992 and 1999 cases and gave Lira 172 days of jail credit for his presentence incarceration in Oklahoma. However, in March 2018, DOC reviewed that decision, determined it was in error, filed an amended ROW, and removed the sentence credit.

¶12 Lira filed a total of four motions seeking custody credit in Milwaukee County circuit court: two *pro se* motions, one motion through counsel, and then a motion for reconsideration, also through counsel. The circuit court denied his first *pro se* motion, without addressing the merits on the grounds that Lira had failed to first submit his request to DOC for an administrative determination of revocation sentence credit under WIS. STAT. § 973.155(2). The circuit court denied his second *pro se* motion for custody credit, on the grounds

_____

[9] The Division of Adult Institutions and the Division of Hearings and Appeals both notified Lira that they were not the appropriate authorities to address his appeal of sentence credit determinations.

[10] Lira requested sentence credit from his arrest in Oklahoma until he entered Oklahoma prison on October 5, 2004, which occurred shortly after his conviction and sentencing in September. We note that some of his requests for sentence credit refer to his presentence custody and other requests refer to custody from arrest to prison entry.

6

that he was ineligible for sentence credit because his service in Oklahoma was for an unrelated matter. The circuit court did not address his Oklahoma presentence credit request because, at that point, DOC had granted him that credit.

¶13    After Lira was appointed counsel, he filed his third motion for custody credit. The circuit court denied it without prejudice and without deciding the merits. The court ruled that Lira was obligated to petition DOC for credit for the requested periods under WIS. STAT. § 973.155(2) before seeking relief from the circuit court. It found it had insufficient information to determine appropriate credit on the merits.

¶14    The circuit court denied Lira's motion for reconsideration, his fourth and final circuit court motion, after reviewing additional documentation. It denied, on the merits, Lira's request for credit from April 16, 2004 onward, determining that *Brown* was inapplicable and that Lira was not made available to Oklahoma by the detainer.[11] The circuit court denied Lira's additional claims without reaching the merits and without prejudice because it found there was insufficient evidence that Lira had properly petitioned DOC for credit through an administrative process.

¶15    This appeal follows.[12] Additional facts will be referenced as needed in the discussion below.

---

[11] The circuit court also denied, on the merits, Lira's request for credit for thirty-five days in 1999 because, upon review, Lira was given credit. Lira does not appeal this issue and we do not consider it further.

[12] Throughout this matter, Lira has pursued sentence credit in the 1992 and 1999 cases by separate motions. We granted his consolidation motion and will issue a single decision for both appeals. Lira's appeals do not impact his three cases resolved in March 2006 by plea agreement; accordingly, we do not address sentence credit with regards to those cases.

**ANALYSIS**

¶16    While now governed by statute, calculating appropriate sentence credit originated under an equal protection analysis.  *See **Klimas v. State***, 75 Wis. 2d 244, 249, 249 N.W.2d 285 (1977).  "Sentence credit is designed to afford fairness so that a person does not serve more time than that to which he or she is sentenced."  ***State v. Obriecht***, 2015 WI 66, ¶23, 363 Wis. 2d 816, 867 N.W.2d 387.

¶17    This case requires the interpretation of WIS. STAT. §§ 973.15(5) and 973.155 to determine what sentence credit is appropriate when a defendant serves time both in Wisconsin and in another jurisdiction.  The interpretation of statutes presents questions of law that we review without deference to the circuit court.  *See **State v. Friedlander***, 2019 WI 22, ¶17, 385 Wis. 2d 633, 923 N.W.2d 849.  "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect."  ***State ex rel. Kalal v. Circuit Court for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶18    As a threshold matter, we determine whether Lira was eligible to petition the circuit court for custody credit and whether the application of the rule of administrative exhaustion barred his claims or his appeals.  Next, we examine Lira's claims for custody credit on his 1992 and 1999 sentences, applying WIS. STAT. § 973.15(5) for his out-of-state custody and WIS. STAT. § 973.155 for traditional sentence credit determination.

## I. Lira's appeal is not foreclosed by the rule of exhaustion of administrative remedies.

¶19 "The rule of exhaustion of administrative remedies is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity." *Nodell Inv. Corp. v. City of Glendale*, 78 Wis. 2d 416, 424, 254 N.W.2d 310 (1977). An aggrieved person "must complete the administrative proceedings before [he or she] come[s] to court." *Id.* However, this "is a rule of policy, convenience, and discretion, not a rule regulating the jurisdiction of the court." *Sauk Cnty. v. Trager*, 118 Wis. 2d 204, 211-12, 346 N.W.2d 756 (1984).

¶20 We conclude that Lira made good-faith efforts and exercised due diligence in appealing his sentence credit determinations through DOC and the administrative process. Our examination of Lira's petitions for sentence credit showed that he requested from DOC custody credit for all days from April 16, 2004, through June 9, 2017. In the circuit court's decision denying Lira's motion for reconsideration, it held that Lira failed to exhaust administrative remedies because DOC did not address Lira's request for credit from May 2005 until April 2006 and then April 2006 onward. The circuit court found that it did not know to what extent DOC considered Lira's credit request for different time periods or how DOC determined that he was not entitled to receive credit. Although our review of the record does not reveal a detailed analysis provided by DOC as to why it concluded that Lira was not entitled to additional sentence credit, he was informed that the "computation was done correctly, and all correct cases are accounted for" by the Fox Lake Correctional Institution Offender records supervisor in November 2017. The next month, in response to Lira's requests for custody credit, a DOC regional chief wrote that "additional credit was not

warranted, beyond an adjustment" for the presentence credit that DOC later removed. Although DOC had difficulty determining the accrual of 2004 presentence credit, Lira's request for the additional credit for the time period from September 2004 through June 2017 was rejected outright.

¶21 It is certainly important that incarcerated offenders pursue remedies through administrative avenues, but that occurred here. We cannot hold a prisoner responsible if DOC fails to address credit requests in a manner or mode that is not clear. By statute, "[i]f the department is unable to determine whether credit should be given, or otherwise refuses to award retroactive credit, the person may petition the sentencing court for relief." WIS. STAT. § 973.155(5). In that same December 2017 letter, a DOC regional chief informed Lira that if he was not satisfied, his recourse was through the courts. Accordingly, after Lira did not receive credit through DOC, he turned to the circuit court for relief. Sentence credit is an issue of due process, and it must be given in fairness. We conclude that Lira made sufficient efforts at administrative review and, therefore, addressing this case on the merits is warranted and the State's reliance on a failure to exhaust administrative remedies is misplaced. Therefore, this appeal is decided upon the merits.

## II. Applying WIS. STAT. § 973.15(5) to Lira's time served in out-of-state custody.

¶22 Relying on WIS. STAT. § 973.15(5) and its application in ***Brown***, Lira argues that he is eligible for sentence credit for the duration of his time in Oklahoma custody, with a deduction for the days he was in Wisconsin or mistakenly released on bail. *See **id.***, 289 Wis. 2d 823, ¶11. We conclude that Lira was not "made available" to Oklahoma after his escape from Wisconsin in 2004, but that he was "made available" to Oklahoma when Wisconsin returned him in a

lawful manner after the plea agreement.  Accordingly, he is entitled to sentence credit under § 973.15(5) from April 5, 2006 onward for his 1992 and 1999 cases.[13]

¶23    WISCONSIN STAT. § 973.15(5) states that "[a] *convicted* offender who is *made available to* another jurisdiction under ch. 976 or in any other lawful manner shall be credited with service of his or her Wisconsin sentence or commitment under the terms of s. 973.155 for the duration of custody in the other jurisdiction."  (Emphasis added)   In *Brown*, 289 Wis. 2d 823, ¶3, this court considered the application of the "made available" language to a factual situation involving Brown being transferred to federal custody following his sentencing after his state probation was revoked, rather than being sent to state prison.  We applied a two-part inquiry to determine that sentence credit under § 973.15(5) accrued for Brown because he was (1) a "convicted offender" at the relevant time, and (2) "the State made him available" to another jurisdiction.  *Brown*, 289 Wis. 2d 823, ¶11.

¶24    We interpret the meaning of statutes through the plain and ordinary meaning of the words.  *See Kalal*, 271 Wis. 2d 633, ¶45.  Based on our holding in *Brown*, and a plain language interpretation of WIS. STAT. § 973.15(5), we

---

[13] We also conclude that Lira is entitled to sentence credit toward the term of his sentences in the 1992 and 1999 cases for periods of time that he was in custody in Wisconsin and Texas as discussed below.

11

conclude that "made available to" means that the State released[14] the offender to another jurisdiction in a lawful manner.[15]

¶25     Looking at the first question, there is no question Lira was a convicted offender during each of the time spans in which he was in out-of-state custody. He was convicted in 1992 and again in 1999, and he had not completed his Wisconsin sentences on those cases as of 2004. Therefore, our analysis hinges on the second inquiry, whether Lira was "made available" by the State to another jurisdiction for each relevant time period: (1) April 16, 2004, until May 2005, in Oklahoma; and (2) April 5, 2006, until June 9, 2017, in Oklahoma.[16]

¶26     Lira's eligibility for sentence credit for out-of-state custody hinges on whether the State made him available to the State of Oklahoma. In *Brown,* this court considered it to be obvious that Brown was "made available" to federal authorities in a lawful manner because he was in custody in Milwaukee, transferred to federal jurisdiction, and he had no ability to direct where he was housed. *Id.*, 289 Wis. 2d 823, ¶11 n.6; *see also* WIS. STAT. § 973.15(5). Here, Lira was in custody in Milwaukee after being convicted on his outstanding Wisconsin charges, he was released to the State of Oklahoma, and he had no ability to direct where he was to be housed.

---

[14] In *Brown*, this court used the phrases "released," "turned over," and "transferred" when discussing the meaning of the phrase "made available to." *State v. Brown*, 2006 WI App 41, ¶¶3, 11, 289 Wis. 2d 823,711 N.W.2d 708.

[15] In this phrasing, the State is the actor making the offender available. The State conceded this point.

[16] Although Lira was arrested and taken into Texas custody in December 2005, he does not argue that he is entitled to sentence credit for this time period under WIS. STAT. § 973.15(5). We address his argument for credit for his time in Texas below.

¶27    We conclude that Lira was a convicted offender who was made available by Wisconsin to Oklahoma under the language of WIS. STAT. § 973.15(5). We next discuss what periods of time Lira is entitled to sentencing credit for his 1992 and 1999 cases for the times that he was in custody outside of Wisconsin.

### A. Lira was not "made available" to Oklahoma after his escape from Wisconsin in 2004.

¶28    Lira's presence in Oklahoma from his arrest in 2004 until he faced trial on Wisconsin charges in 2005 was not the result of Wisconsin making him available in a lawful manner, but instead was the result of his escape, and this defeats this aspect of his claims. Lira escaped from custody in Milwaukee on April 15, 2004, and fled to Oklahoma. The very next day, Oklahoma apprehended and jailed him on charges that he had committed several criminal acts in Oklahoma.

¶29    Lira argues there are three ways he was made available to Oklahoma in the initial time period:  (1) Wisconsin issued the ROW on April 16, 2004; (2) Wisconsin issued a detainer; and (3) Wisconsin acquiesced to his continued custody by Oklahoma. We disagree that he has shown that any of these qualify. Considering his last argument first, we decline to review his argument that there was an endorsement by the State when Wisconsin acquiesced to Lira's confinement in Oklahoma, because the argument is not supported by legal authority or reasoning. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶30    Considering Lira's first two arguments together—that Wisconsin made him available in a lawful manner when it issued the ROW or the detainer—

13

we are not persuaded by Lira's position.  Both of those documents provided notice that Wisconsin had a legal interest in the named defendant.  The ROW authorizes corrections officials to hold a revoked defendant; it does not transfer a revoked defendant to another jurisdiction.  A detainer does not carry a custodial mandate. *See State v. Carter*, 2010 WI 77, ¶33, 327 Wis. 2d 1, 785 N.W.2d 516.  Neither document established that Lira was "made available" to Oklahoma.

¶31     Moreover, Lira's ROW and detainer arguments do not address our required inquiries for out-of-state sentence credit under *Brown*.  First, Lira relies upon on a footnote in *Brown* to argue that he was eligible for sentence credit via the ROW because there was pre-printed text on the form that noted jail credit accrued "until received at the institution."  *See id.*, 289 Wis. 2d 823, ¶11 n.7. Reading the ROW as Lira suggests would result in the ROW having one start date and two end dates, which is an absurd result we cannot endorse.  Second, Lira relies on an undeveloped legal argument based on *State v. Nyborg*, 122 Wis. 2d 765, 364 N.W.2d 553 (Ct. App. 1985) (holding that a detainer is an insufficient connection for sentence credit under WIS. STAT. § 973.155), in asking us to conclude that his revocation sentence commenced when Wisconsin issued the detainer.  He appears to abandon this argument in his reply brief, arguing that his revocation sentence was constructively commenced.  Further, we are not convinced that *Brown* requires us to analyze the commencement of Lira's sentence.  Our inquiry focuses on whether Wisconsin made Lira available to Oklahoma in April 2004.

¶32     We conclude that Lira was not made available by Wisconsin to Oklahoma authorities from the time of his arrest in 2004 until he was brought to Wisconsin in May 2005, to face unresolved charges.  Therefore, he was ineligible

for sentence credit during that time period under WIS. STAT. § 973.15(5) and under the two-part inquiry set forth in ***Brown***, 289 Wis. 2d 823, ¶11.

### B. Lira was "made available" to Oklahoma when Wisconsin returned him to Oklahoma in a lawful manner after he was sentenced on his outstanding Wisconsin charges and he is entitled to sentence credit from April 5, 2006 onward.

¶33    Lira argues that he is eligible for sentence credit for the time he served his Oklahoma sentence, from April 5, 2006, until June 9, 2017, because Wisconsin sent him back to Oklahoma after the resolution of his outstanding Wisconsin charges.   Similar to ***Brown***, it is not clear in the record by what mechanism Lira was sent from Wisconsin back to Oklahoma,[17] but at that time Lira did not control his movements or in what prison he was housed.

¶34    In accordance with the holding in ***Brown*** that Lira was not required to enter prison to commence his sentence, we conclude that Lira had been convicted of the charges in the 1992 and 1999 cases, his parole and probation had been revoked, and Wisconsin made him available to Oklahoma.  Lira resumed his Oklahoma sentence on April 5, 2006, and because he was made available by Wisconsin, he is entitled to sentence credit on his Wisconsin sentences for the 1992 and 1999 cases.

¶35    We conclude that under ***Brown's*** construction of WIS. STAT. § 973.15(5) Lira was improperly denied sentence credit to which he was entitled

---

[17]    We note for context that both Wisconsin and Oklahoma have substantially identical statutory provisions on the Interstate Agreement on Detainers, which allow a "sending state" that has custody of a prisoner to grant temporary custody to a "receiving state" that has a pending charge against a prisoner to allow for trial.  *See* WIS. STAT. § 976.05; OKLA. STAT. TIT. 22 § 1347.

after Wisconsin made him available to Oklahoma custody. He is eligible for credit from April 5, 2006, until he was released from Oklahoma prison on June 9, 2017, and returned to Wisconsin.

### III. Applying WIS. STAT. § 973.155 to Lira's time served in jail both in Wisconsin and Oklahoma.

¶36    Under Wisconsin's sentence credit statute, a convicted offender is eligible for sentence credit while awaiting trial, during trial, and awaiting imposition of a sentence. WIS. STAT. § 973.155(1)(a). To determine the proper amount of sentence credit accrued by statute, the circuit court "must make two determinations: (1) whether the offender was 'in custody' within the meaning of WIS. STAT. § 973.155(1)(a); and (2) whether all or part of the 'custody' for which sentence credit is sought was 'in connection with the course of conduct for which sentence was imposed.'" *State v. Johnson*, 2009 WI 57, ¶27, 318 Wis. 2d 21, 767 N.W.2d 207 (citations omitted).

¶37    As an alternative to his argument under WIS. STAT. § 973.15(5), Lira asserts that he is eligible for presentence credit for the time he spent in an Oklahoma jail from arrest until sentencing in 2004. Furthermore, Lira argues that he accrued sentence credit for the time he spent in a Wisconsin jail while awaiting charges, not including his time at liberty in Texas, but including the time he was in a Texas jail awaiting transport to Wisconsin.

### A. Lira was ineligible for sentence credit for the custodial time he spent in an Oklahoma jail from arrest until sentencing.

¶38    Lira argues that he is entitled to presentence credit in Wisconsin for the time he spent in an Oklahoma jail awaiting trial and sentencing on his

16

Oklahoma charges, from April 16, 2004, until September 29, 2004.[18] However, Lira's presentence detention in Oklahoma was based on his arrest and criminal conduct there. There was no connection between the charges Lira faced in Wisconsin and those he faced in Oklahoma. "In general, an offender is not entitled to sentence credit under sec. 973.155, Stats., for custody that is being served in satisfaction of another unrelated criminal sentence. If the charges are related, however, sentence credit should be allowed." *State v. Gavigan*, 122 Wis. 2d 389, 393, 362 N.W.2d 162 (Ct. App. 1984) (footnote omitted).

¶39 Turning to Lira's arguments that the ROW and detainer establish Wisconsin's custody, these arguments are as misplaced here as they were under the out-of-state sentence credit statute. Neither the ROW nor detainer establish a sufficient connection for Lira's custody in Oklahoma with the course of conduct for which Lira's revocation sentences were imposed. He was arrested in Oklahoma for crimes he committed there. In contrast, Lira was arrested in Texas on a warrant based on his Wisconsin course of conduct. Although it is possible for custodial time to be connected to different charged offenses, here, Lira has failed to show a connection. *See Carter*, 327 Wis. 2d 1, ¶¶74-75; *see also Obriecht*, 363 Wis. 2d 816, ¶48. Lira has failed to prove that his custody in Oklahoma from April 16, 2004, until his sentencing there was connected to his revocation sentence or the course of conduct for which revocation was imposed.

---

[18] DOC initially was persuaded that Lira was eligible for sentence credit for this time period, but it removed the credit on the second amended ROW on March 9, 2018. The record does not reflect why DOC changed its mind on this determination; however, we agree that Lira is ineligible for credit on this time.

17

¶40    Accordingly, Lira fails to establish that he was denied properly accrued sentence credit for his presentence detention in Oklahoma because he was not in custody in Oklahoma in connection with the course of conduct for which his Wisconsin revocation sentence was imposed.

**B. Lira was eligible for sentence credit for the custodial time he spent in Wisconsin and Texas jails in 2005 and 2006.**

¶41    Lira argues he is entitled to sentence credit for the time after he returned to Wisconsin in May 2005, until he was released on bail on June 15, 2005, and then from his arrest in Texas on December 13, 2005, until he was sentenced in Wisconsin on March 17, 2006.[19]  We separately address Lira's time in Texas and Wisconsin.

¶42    If Lira had not escaped and instead faced trial and sentencing for the endangering safety charge in Wisconsin, he would have received credit against the term of his revocation sentences until he was sentenced on the revocations of the 1992 and 1999 cases. *See State v. Boettcher*, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988).  The undisputed record shows that Lira earned ninety-seven days of jail custody credit against the term of his sentences in the 1992 and 1999 cases. The State issued the 2004 ROW and detainer to ensure Lira's return to Wisconsin for trial on his pending endangering safety charge as well as the revocation of his parole and probation in the 1992 and 1999 cases.

---

[19] Lira concedes that under *State v. Friedlander,* 2019 WI 22, ¶23, 385 Wis. 2d 633, 923 N.W.2d 849, he is not entitled to credit for time that Lira was granted bail and then absconded to Texas and, therefore, we need not address potential credit for those days.  *Id.*, ¶23 (holding that a defendant not in custody is not statutorily due sentence credit).

¶43    If sentence credit under WIS. STAT. § 973.155 "has not been applied at sentencing to any person who is in custody or to any person who is on probation, extended supervision or parole, the person may petition the department to be given credit[.]"  Sec. 973.155(5).  Here, Lira was not given custody credit at the time of sentencing for the 2004-05 charges; therefore, we consider the application of credit against the revocation sentences.

¶44    When we examine the days Lira was in jail in Wisconsin and Texas, we consider three time periods:  (1) after his initial arrest and before his escape in 2004; (2) after his arrest in Texas in 2005 until his return to Wisconsin in January 2006; and (3) when he arrived in Wisconsin in January 2006 until he was returned to Oklahoma in April 2006.  The connection between these time periods was interrupted by Lira's escapes and bail jumping; nevertheless, we are persuaded that all three time periods must be considered under WIS. STAT. § 304.072(5), which states that "[t]he sentence of a revoked probationer shall be credited with the period of custody in a jail ... pending revocation and commencement of sentence according to the terms of s. 973.155."

¶45    The sentence credit analysis under WIS. STAT. § 973.155 requires us to examine whether Lira's custody was "in connection with the course of conduct for which sentence was imposed."  His confinement in jail in Wisconsin had a sufficient factual connection to the revocation sentences in the 1992 and 1999 cases to entitle Lira to sentence credit in those cases.  Similarly, Lira's arrest and confinement in Texas was based on the warrant seeking his return to face charges in Wisconsin.  Like the defendant in *Beets*, Lira's endangering safety charge in 2004 initiated the probation hold, the revocation orders, and his eventual reconfinement on the parole and probation violations in the 1992 and 1999 cases.  *See State v. Beets*, 124 Wis. 2d 372, 378-79, 369 N.W.2d 382 (1985).  This

created a relationship between the cause of confinement between Lira's 1992 and 1999 cases and his later 2004-05 cases. *See id.* at 378. Because Lira did not earn sentence credit against his 2004-05 cases, we do not contemplate whether this would have created an issue of impermissible dual credit. *See **Boettcher***, 144 Wis. 2d at 95.

¶46 We conclude that Lira was improperly denied sentence credit under WIS. STAT. §§ 304.072 and 973.155 for his time in Wisconsin jails from May 2005, until June 15, 2005, and January 6, 2006, until April 5, 2006, and in Texas jail from December 13, 2005 until January 6, 2006.

## CONCLUSION

¶47 We conclude that the circuit court incorrectly decided that Lira had failed to exhaust his administrative remedies. We further conclude that this court's decision in ***Brown*** requires us to conclude that Lira was owed sentence credit from April 5, 2006, until he was released from Oklahoma prison eleven years later on June 9, 2017. Further, we conclude that he accrued sentence credit under WIS. STAT. §§ 973.155 and 304.072 for his custodial time in a Wisconsin jail from May 2005, until June 15, 2005; and January 6, 2006, until April 5, 2006; and in a Texas jail from December 13, 2005, until January 6, 2006. We conclude that he was not entitled to sentence credit for his initial custody in Oklahoma, under either WIS. STAT. § 973.15(5) for out-of-state custody for the time period from April 16, 2004, until May 2005, or under § 973.155 for presentence credit for the time period April 16, 2004, until September 29, 2004. Therefore, we affirm in part and reverse in part the circuit court's orders denying Lira sentence credit in the 1992 and 1999 cases. We remand to the circuit court for proceedings consistent with this decision.

*By the Court.—Orders affirmed in part; reversed in part and cause remanded for further proceedings.*

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.