# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP691-CR & 2019AP692-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>   Plaintiff-Respondent-Petitioner,<br>  v.<br>Cesar Antonio Lira,<br>   Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 394 Wis. 2d 523,950 N.W.2d 687
(2020 – unpublished)

| | |
|---|---|
| OPINION FILED: | November 18, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 27, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Frederick C. Rosa |

JUSTICES:

ZIEGLER, C.J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Jacob J. Wittwer,* assistant attorney general; with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Jacob J. Wittwer.*

For the defendant-appellant, there was a brief filed by *Christopher P. August,* assistant state public defender. There was an oral argument by *Christopher P. August.*

**2021 WI 81**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos. 2019AP691-CR & 2019AP692-CR
(L.C. Nos. 1992CF921195 & 1999CF163)

STATE OF WISCONSIN       :       IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

      **v.**

**Cesar Antonio Lira,**

      **Defendant-Appellant.**

**FILED**

**NOV 18, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, C.J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This is a review of an unpublished decision of the court of appeals, State v. Lira, Nos. 2019AP691-CR & 2019AP692-CR, unpublished slip op. (Wis. Ct. App. Sep. 29, 2020), affirming in part and reversing in part the Milwaukee County circuit court's[1] order denying Cesar Antonio Lira's motion for sentence credit.

---

[1] The Honorable Frederick C. Rosa presided.

¶2 Lira argues that he is entitled to sentence credit against his 1992 and 1999 sentences for time he spent incarcerated in Oklahoma between 2006 and 2017. According to Lira, he was "made available" to Oklahoma and, under Wis. Stat. § 973.15(5) (2017-18),[2] he is entitled to credit for time served. In addition, Lira claims that under Wis. Stat. §§ 304.072(5)[3] and 973.155,[4] he must

---

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated. The full text of Wis. Stat. § 973.15(5) is as follows:

A convicted offender who is made available to another jurisdiction under ch. 976 or in any other lawful manner shall be credited with service of his or her Wisconsin sentence or commitment under the terms of s. 973.155 for the duration of custody in the other jurisdiction.

[3] The full text of Wis. Stat. § 304.072(5) is provided below:

The sentence of a revoked probationer shall be credited with the period of custody in a jail, correctional institution or any other detention facility pending revocation and commencement of sentence according to the terms of s. 973.155.

[4] Wisconsin Stat. § 973.155 states, in relevant part:

(1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

2

receive credit for time he spent detained in Wisconsin and Texas from 2005 to 2006.

¶3 Both Wis. Stat. §§ 973.15(5) and 304.072(5) incorporate Wisconsin's foundational sentence-credit statute, Wis. Stat. § 973.155, and under § 973.155, Lira is not entitled to credit. Neither his incarceration in Oklahoma between 2006 and 2017 nor his detention in Wisconsin and Texas between 2005 and 2006 were "in connection with the course of conduct for which [the 1992 and 1999 sentences were] imposed." § 973.155(1)(a). Thus, we reverse the court of appeals and conclude that Lira is not entitled to sentence credit.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 Over the course of 13 years, Lira transited thousands of miles while fleeing government authorities and committed seven separate offenses in two states. The facts, as shown by the record and agreed upon by the parties, are stated below.

¶5 In July 1992, the Milwaukee County circuit court sentenced Lira to 10 years' imprisonment for possession of cocaine with intent to deliver, and he was released on parole in September 1996. Over two years later, in January 1999, Lira was arrested on separate charges. According to the 1999 criminal complaint, Lira was charged with being a felon in possession of a firearm, conspiring to deliver cocaine, obstructing or resisting an officer, and possessing with intent to distribute

---

§ 973.155(1)(a).

3

tetrahydrocannabinols. Lira's parole supervision in the 1992 case was revoked as a result of the 1999 charges.

¶6 Lira pleaded guilty in May 1999 to being a felon in possession of a firearm and conspiring to distribute cocaine. In December 1999, the Milwaukee County circuit court sentenced Lira to two years in prison for being a felon in possession of a firearm. For the conspiracy charge, the court imposed and stayed a sentence of 16 years imprisonment and placed Lira on probation for 12 years concurrent with his incarceration. In January 2001, Lira was released from prison and was placed on court-ordered supervision for both the 1992 and 1999 cases——parole for the 1992 case and probation for the 1999 case.

¶7 As a condition of his release, Lira was required to report regularly to a Department of Corrections ("DOC") agent overseeing his supervision. In November 2002, the DOC agent attempted to take Lira into custody for alleged violations of his conditions of release, namely, traveling to Illinois without the agent's permission and possessing $55,000 in cash. In response, Lira fled from the agent's office and escaped.

¶8 Lira's whereabouts remained unknown until January 6, 2004, when Lira was arrested by Wisconsin Department of Justice agents and was taken into custody. On January 9, 2004, parole and probation holds were placed on Lira for the 1992 and 1999 cases. Lira was also charged with endangering safety by use of a dangerous weapon.

¶9 While being transported to a medical appointment on April 15, 2004, Lira fled officers and escaped in an awaiting

4

vehicle with his girlfriend. As a result, Lira was charged with escape. The next day, on April 16, 2004, Lira's parole and probation were revoked. The stay of the 16-year sentence in the 1999 case was removed, and Lira's reconfinement for the 1992 case was ordered.

¶10 Meanwhile, Lira was driving with his girlfriend and her child to Oklahoma. Once in Oklahoma, on April 16, 2004, Lira initiated a high-speed car chase with police. Lira ran a road block and crashed the vehicle he was driving. His girlfriend died as a result of the collision. That same day, Oklahoma police arrested Lira. He later pleaded guilty to second-degree murder, eluding police, running a roadblock, and child abuse/neglect. On September 29, 2004, a court in Creek County, Oklahoma, sentenced Lira to 20 years' imprisonment for his offenses.

¶11 On or about May 22, 2005,[5] Oklahoma transferred Lira to Wisconsin on detainer to face his 2004 charges of endangering safety and escape. On June 15, 2005, Lira was released by mistake.[6] Again, Lira fled south, and on December 13, 2005, he was arrested in San Antonio, Texas. Wisconsin filed a new charge of bail jumping against Lira, and Lira was returned to this state on January 11, 2006.

---

[5] The record is not clear as to whether Lira was returned to Wisconsin on May 19 or May 22, 2005. Because we hold that Lira is not entitled to sentence credit in this case for his time spent in Wisconsin and Texas in 2005 and 2006, the exact date on which Lira was provided to Wisconsin authorities in May 2005 is not material.

[6] The record is unclear whether Lira left confinement after posting bail or if he was released on bond.

5

¶12 On March 17, 2006, after entering into a global plea agreement on the 2004 charges of endangering safety and escape and the 2005 charge of bail jumping, the Milwaukee County circuit court sentenced Lira to three years of incarceration and three years of extended supervision, both to be served consecutive to his Oklahoma sentence. Pursuant to the Interstate Agreement on Detainers ("IAD"), entered into by both Oklahoma and Wisconsin,[7] Wisconsin returned Lira to Oklahoma on April 5, 2006, to complete the remainder of his Oklahoma sentence. Lira remained in Oklahoma until his sentence there was completed on June 9, 2017. He was soon thereafter transported to Wisconsin to complete his sentences for the 1992 and 1999 cases and the 2004 and 2005 cases. On June 16, 2017, he arrived in Wisconsin.

¶13 In September 2017, Lira filed a pro se motion for sentence credit against his sentences in the 1992 and 1999 cases. He argued that, under Wis. Stat. § 973.15(5), he was entitled to sentence credit for all the time he spent in custody in Oklahoma between April 16, 2004, when he was arrested for his Oklahoma offenses, and June 9, 2017, when his Oklahoma sentence was complete. The circuit court denied this request, citing lack of administrative exhaustion.

¶14 In January 2018, Lira filed a second pro se motion for sentence credit under Wis. Stat. § 973.15(5), this time with records documenting his attempts to exhaust administrative

---

[7] See Wis. Stat. § 976.05 ("Agreement on detainers"); Okla. Stat. tit. 22, § 1347 (2020) ("Interstate Agreement on Detainers").

6

remedies with the DOC. The circuit court denied the motion on the merits, reasoning that the Oklahoma sentence was separate and distinct from the 1992 and 1999 cases, and that Lira had already received sentence credit in Oklahoma for the time spent in custody in that state. After obtaining appointed counsel, Lira appealed to the court of appeals. However, Lira voluntarily dismissed the appeal in favor of filing with advice of counsel a more complete motion for sentence credit with the circuit court. On July 27, 2018, the court of appeals dismissed Lira's appeal.

¶15 In October 2018, by appointed counsel, Lira filed a third motion for sentence credit. He again argued that under Wis. Stat. § 973.15(5), he was entitled to sentence credit for all the time spent in custody from April 16, 2004, to the end of his Oklahoma sentence on June 9, 2017. In addition, Lira claimed that, under Wis. Stat. §§ 973.15(5) and 304.072(4), he was entitled to credit for time spent in Wisconsin, Texas, and Oklahoma from May 22, 2005, when he was transferred to Wisconsin on detainer, to the completion of his Oklahoma sentence on June 9, 2017. Finally, Lira argued that he was entitled to credit for the time spent in Oklahoma custody between his arrest on April 16, 2004, and his sentencing in Oklahoma on September 29, 2004. On October 15, 2018, the circuit court denied the motion for lack of evidence and failure to exhaust administrative remedies.

¶16 In November 2018, Lira filed a motion for reconsideration, arguing that he in fact did request sentence credit from the DOC. Lira also provided additional documentation to assist in the circuit court's inquiry. On March 25, 2019, the

7

circuit court denied the motion for reconsideration. The circuit court reasoned that under Wis. Stat. § 973.15(5), Lira was not "made available" to Oklahoma on April 16, 2004. Lira escaped custody and was arrested on separate Oklahoma charges. Thus, the circuit court denied his request for credit between April 16, 2004, and May 22, 2005. However, with regard to Lira's request for sentence credit between his return to Wisconsin on May 22, 2005, and the completion of his Oklahoma sentence on June 9, 2017, the circuit court determined that Lira had not properly presented the issue to the DOC and therefore did not address the merits. Lira appealed this decision, and on April 17, 2019, the court of appeals consolidated the 1992 and 1999 cases to facilitate their review.

¶17 On September 29, 2020, the court of appeals issued a decision affirming in part and reversing in part the circuit court's order. Lira, Nos. 2019AP691-CR & 2019AP692-CR. First, the court of appeals concluded that Lira properly exhausted administrative remedies and his request for sentence credit was not foreclosed. Id., ¶¶19-21. The State did not appeal this determination.

¶18 Next, the court of appeals concluded that as a "convicted offender" Lira was not "made available" under Wis. Stat. § 973.15(5) when he escaped from Wisconsin custody and committed additional offenses in Oklahoma. Id., ¶¶28-32. The court of appeals also determined that under Wis. Stat. § 973.155(1)(a), Lira's arrest in Oklahoma was not "in connection with the course of conduct" underlying the 1992 and 1999 cases. Id., ¶¶38-40. Thus, Lira was not entitled to credit from April 16, 2004, to May

8

22, 2005, while in Oklahoma custody. Lira did not appeal this conclusion.

¶19 The court of appeals continued and held that Lira was entitled to sentence credit for the entire time spent in Oklahoma custody between April 5, 2006, and June 9, 2017. Id., ¶¶33-35. Citing its published decision, State v. Brown, 2006 WI App 41, 289 Wis. 2d 823, 711 N.W.2d 708, the court of appeals held that because the State turned Lira over to Oklahoma officials on April 5, 2006, Wisconsin had "made [Lira] available to another jurisdiction" under Wis. Stat. § 973.15(5) and Lira qualified for credit. Id., ¶¶33-35. Finally, the court of appeals concluded that Lira's detainment in Wisconsin and Texas between May 22, 2005, and April 5, 2006, was sufficiently related to the 1992 and 1999 cases that sentence credit for that time was warranted under § 973.155(1)(a). Id., ¶¶41-46.

¶20 The State filed a petition for review with this court, challenging the court of appeals' conclusion that sentence credit was due in the 1992 and 1999 cases for Lira's time spent incarcerated between May 22, 2005, and April 5, 2006, and between April 5, 2006, and June 9, 2017. We granted the petition on January 20, 2021.

## II. STANDARD OF REVIEW

¶21 In this case, we are asked to interpret Wisconsin statutes. "Interpretation of a statute is a question of law that we review de novo, although we benefit from the analyses of the

circuit court and the court of appeals." Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759.

¶22 "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations and quotations omitted). Furthermore,

> statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage.

Id., ¶46 (citations omitted).

### III. ANALYSIS

¶23 Lira argues, and the court of appeals agreed, that he is entitled to sentence credit for his 1992 and 1999 convictions under Wis. Stat. § 973.15(5) for the time he spent incarcerated in Oklahoma between April 5, 2006, and June 9, 2017. He also claims that, under Wis. Stat. §§ 304.072 and 973.155(1)(a), he is entitled to approximately five months of sentence credit for the time he was detained in Wisconsin and Texas between May 22, 2005, and April

10

5, 2006. The State contests both these points, and we will address the issues in turn.

¶24 Notably, on appeal, Lira does not seek sentence credit for time spent in Oklahoma custody prior to his transfer on detainer to Wisconsin in May 2005. Sentence credit for time spent in Wisconsin from January to April 2004, prior to Lira's escape to Oklahoma, is also not in dispute. Further, sentence credit for his 2004 and 2005 Wisconsin convictions is not at issue in this case. The court is not asked to apply credit as to Lira's pre-sentence or post-sentence confinement for his endangering safety, escape, and bail jumping convictions.

¶25 As explained below, we reverse the court of appeals. Lira is not entitled to sentence credit in the 1992 and 1999 cases for his incarceration between May 22, 2005, and April 5, 2006, and for his incarceration between April 5, 2006, and June 9, 2017. During that period, Lira's time in custody was not "in connection with the course of conduct for which [the 1992 and 1999 sentences were] imposed." Wis. Stat. § 973.155(1)(a).

A. Time Spent in Oklahoma Between April 2006 and June 2017.

1. The Statutory Text

¶26 Wisconsin Stat. § 973.15 establishes miscellaneous guidelines in setting and instituting criminal sentences. For example, § 973.15(1) states that Wisconsin sentences "commence at noon on the day of sentence." The statute establishes basic calculation procedures for concurrent and consecutive sentences, and it confirms that, if a prisoner were to escape, his time at

11

large "shall not be computed" as service of the sentence. § 973.15(1), (2), (2m), (7). In this context, § 973.15 includes a provision on sentence credit when a convicted offender in Wisconsin is transferred to another jurisdiction:

> A convicted offender who is made available to another jurisdiction under ch. 976 or in any other lawful manner shall be credited with service of his or her Wisconsin sentence or commitment under the terms of s. 973.155 for the duration of custody in the other jurisdiction.

§ 973.15(5).

¶27 The statute quoted above explicitly references, and ties its obligations to, Wis. Stat. § 973.155. This is not altogether surprising. In Wisconsin, § 973.155 is the foundational sentence-credit statute. See State v. Elandis Johnson, 2009 WI 57, ¶32, 318 Wis. 2d 21, 767 N.W.2d 207 (reasoning that, "[t]o be eligible for sentence credit in Wisconsin," a defendant must comply with the credit requirements under § 973.155(1)(a)); State v. Friedlander, 2019 WI 22, ¶22, 385 Wis. 2d 633, 923 N.W.2d 849 ("[Wisconsin] Stat. § 973.155 governs when a defendant is entitled to receive sentence credit.").

¶28 Section 973.155 is titled "Sentence credit" and includes provisions detailing when sentence credit is due, Wis. Stat. § 973.155(1), (1m), (3), (4), by whom and when sentence credit is calculated, § 973.155(2), and how a sentence credit can be challenged, § 973.155(5), (6). See State v. Lopez, 2019 WI 101, ¶26, 389 Wis. 2d 156, 936 N.W.2d 125 ("The titles of the statutes are not part of the statutes . . . [b]ut the titles are part of a statute's context and can be relevant to statutory

12

interpretation." (cleaned up)); Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used . . . ."). Wisconsin statutes repeatedly cite and refer back to § 973.155 for sentence credit determinations. See, e.g., Wis. Stat. § 302.11(7)(am) (stating that, when revoking an individual's parole, calculation of the remaining sentence must be made "in accordance with . . . [s.] 973.155"); Wis. Stat. § 302.43 ("Good time" statute for confinement in county jails, which notes that inmates are given credit "for time served prior to sentencing under s. 973.155"); Wis. Stat. § 304.072(5) (noting that the period of time spent in confinement by a revoked probationer pending commencement of his sentence will be credited toward the sentence "according to the terms of s. 973.155").

¶29 Section 973.155 sets a basic rule for sentence credit determinations: a defendant will receive credit for time spent incarcerated when that time has a factual connection to the offense for which he or she was convicted. "Sentence credit is designed to afford fairness so that a person does not serve more time than that to which he or she is sentenced." State v. Obriecht, 2015 WI 66, ¶23, 363 Wis. 2d 816, 867 N.W.2d 387; see also State v. Marcus Johnson, 2007 WI 107, ¶¶35-36, 304 Wis. 2d 318, 735 N.W.2d 505 (explaining the background of Wis. Stat. § 973.155 and its enactment in the wake of a determination by this court in Klimas v. State, 75 Wis. 2d 244, 249 N.W.2d 285 (1977), that the lack of sentence credit can violate prisoners' equal protection rights). Thus, § 973.155(1)(a) states that "[a] convicted offender shall be given credit toward the service of his or her sentence for all

13

days spent in custody in connection with the course of conduct for which sentence was imposed." This court has interpreted this provision to include two requirements: "(1) the defendant must show that the defendant was 'in custody'; and (2) the defendant must show that the custody was 'in connection with the course of conduct for which the sentence was imposed.'" Friedlander, 385 Wis. 2d 633, ¶23 (quoting § 973.155(1)(a)); see also State v. Carter, 2010 WI 77, ¶56, 327 Wis. 2d 1, 785 N.W.2d 516 (reasoning that § 973.155 requires a "factual connection between custody and the conduct for which sentence is imposed," not mere "procedural connection").

¶30 In line with the fairness principles underlying sentence credits and Wis. Stat. § 973.155, this court has repeatedly held that, while criminal defendants are entitled to sentence credit for incarceration factually connected to an offense, they are not entitled to credit already counted toward a separate and consecutive sentence. As this court explained in State v. Boettcher, 144 Wis. 2d 86, 96-101, 423 N.W.2d 533 (1988), when interpreting § 973.155, the intent of sentence credit is "to make sure that no prisoner failed to get credit for pretrial detention"; sentence credit is not intended as a workaround, reducing aggregate lengths of sentences through "dual credit for multiple charges." See also Obriecht, 363 Wis. 2d 816, ¶36 ("[W]hen sentences are consecutive, sentence credit is not issued to more than one sentence so long as the first sentence to be served is sufficient to receive the sentence credit at issue.").

14

¶31 Despite these principles at the core of Wisconsin's sentence credit law, Lira now argues, even though he was convicted in a separate state for conduct completely unrelated to his 1992 and 1999 Wisconsin convictions, that he is entitled to over 11 years of sentence credit for his Wisconsin offenses. The law does not countenance this result.

¶32 It is uncontested that Lira's 1992 and 1999 criminal activities did not have a factual connection to Lira's evading police in Oklahoma on April 16, 2004, crashing his car, and in the process, killing an individual and endangering a child. Lira admits that he is unable to meet the standard established under Wis. Stat. § 973.155(1)(a) that the period of incarceration in Oklahoma be factually "in connection with the course of conduct for which the sentence was imposed."[8] Friedlander, 385 Wis. 2d 633, ¶23.

¶33 It is also undisputed that Lira's Wisconsin sentences ran consecutively to his Oklahoma sentences. On April 16, 2004, Lira's parole in his 1992 conviction was revoked, and the stay was lifted for the sentence in his 1999 conviction. From that time onward, Lira was required to serve the period of incarceration due in the 1992 and 1999 cases regardless of new offenses he may have committed in 2004 and 2005. Thus, under Boettcher, 144 Wis. 2d at 100, Lira is not entitled to dual credit against both his Oklahoma

---

[8] At oral argument, in fact, Lira's attorney conceded that Lira's conduct underlying his 1992 and 1999 offenses was "not factually connected to his fleeing in Oklahoma . . . years later."

sentence and his 1992 and 1999 Wisconsin sentences for time spent incarcerated in Oklahoma.

¶34 Lira's statutory argument relies on an exceedingly narrow, and ultimately unconvincing, reading of Wis. Stat. § 973.15(5). According to Lira, § 973.15(5)'s requirement that a "convicted offender . . . made available to another jurisdiction" receives credit toward "his or her Wisconsin sentence" trumps the factual-connection test under Wis. Stat. § 973.155(1)(a) and Boettcher. Lira argues he was a "convicted offender" and he was "made available" to Oklahoma on April 5, 2006, and thus, he is entitled to sentence credit. Under Lira's reasoning, § 973.155 and the prohibition against dual credit simply do not apply.

¶35 However, even if a "convicted offender" is "made available to another jurisdiction," under § 973.15(5)'s own terms, sentence credit must conform to "the terms of s. 973.155." The language of Wis. Stat. § 973.15(5) is unambiguous: credit is due under the provision only if it is warranted under § 973.155, which includes the factual-connection test found in § 973.155(1)(a). Given that "the meaning of the statute is plain," no further inquiry is necessary. Kalal, 271 Wis. 2d 633, ¶45. Lira did not comply with § 973.155(1)(a), and he is attempting to receive improper dual credit. See Boettcher, 144 Wis. 2d at 100.

2. Arguments raised by Lira and the State.

¶36 Lira argues that this plain reading of Wis. Stat. § 973.15(5) creates improper surplusage in Wisconsin statutes. According to Lira, if we require, as § 973.15(5) states, that he comply with the factual connection standard under Wis. Stat.

16

§ 973.155, section 973.15(5) would have no role or utility. A reader could simply look to § 973.155 to determine whether sentence credit applies.

¶37 But it was the legislature's choice to require sentence credit under Wis. Stat. § 973.15(5) to be made "according to the terms of s. 973.155." The legislature did not choose to create a new standard when a convicted offender is transferred to another jurisdiction, nor did it leave the question unresolved for the judiciary to fashion an appropriate test. Instead, it explicitly linked § 973.15(5) to Wis. Stat. § 973.155. We are bound to uphold that decision. Kalal, 271 Wis. 2d 633, ¶46 ("If this process of analysis yields a plain, clear statutory meaning, . . . the statute is applied according to this ascertainment of its meaning." (quotations omitted)).

¶38 It is true that when interpreting statutes, courts should strive to "avoid surplusage." Id. "We are to assume that the legislature used all the words in a statute for a reason." State v. Matasek, 2014 WI 27, ¶18, 353 Wis. 2d 601, 846 N.W.2d 811. However, Wis. Stat. § 973.15(5) is not an extraneous provision with no utility. It clarifies an important point: when a convicted individual in Wisconsin custody is transferred to another jurisdiction, he is entitled to sentence credit so long as it complies with § 973.155. This explanation is significant because most sentence credit determinations are made immediately after sentencing. See § 973.155(2) ("After the imposition of sentence, the court shall make and enter a specific finding of the number of days for which sentence credit is to be granted, which

17

finding shall be included in the judgment of conviction."). Further, § 973.155(1)(a) includes provisions that specifically grant credit for time spent in custody prior to sentencing. See § 973.155(1)(a)1.-3. (stating that credit may be owed when an individual is in custody "awaiting trial," while "being tried," and while "awaiting imposition of sentence"). Without § 973.15(5)'s clarification, litigants or judges may have read § 973.155 to apply only in the pre-sentencing context. The argument is not unknown to this court. See, e.g., State v. Lamar, 2011 WI 50, ¶30, 334 Wis. 2d 536, 799 N.W.2d 758 ("Lamar argues that § 973.155 is inapplicable here because the statute has been construed to govern only the award of sentence credit for pre-sentence custody.")

¶39 Wisconsin Stat. § 973.15(5) is included in a provision that details miscellaneous rules for dates, times, and lengths of criminal sentences. See § 973.15(1), (2), (2m), (8). It discusses sentences from other jurisdictions, as well as movement of the convicted offender in and out of prison. § 973.15(3), (4), (7) (describing rules for concurrent or consecutive foreign sentences and how to compute a sentence when a prisoner escapes). The legislature made a reasonable decision to confirm the applicability of Wis. Stat. § 973.155 while a prisoner is serving his sentence and when he is transferred out of the prison.

¶40 To the extent that some surplusage exists, it is well accepted that redundancy occurs in statutes. The mere existence of repetition cannot contravene plain language. See Kalal, 271

18

Wis. 2d 633, ¶46 ("Statutory language is read <u>where possible</u> to give reasonable effect to every word, in order to avoid surplusage" (emphasis added).); <u>Milwaukee Dist. Council 48 v. Milwaukee County</u>, 2019 WI 24, ¶17 n.10, 385 Wis. 2d 748, 924 N.W.2d 153 ("Even if a plain meaning interpretation creates surplusage, sometimes legislatures <u>do</u> create surplusage and redundancies of language, and therefore the canon against surplusage is not absolute."); Antonin Scalia & Brian A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 176 (2012) ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage."). Notably, Lira's interpretation of Wis. Stat. § 973.15(5) would wholesale eliminate "according to the terms of s. 973.155" from the statute.

¶41 Lira also claims that this court must accept his legal reasoning because it is supported by published precedent from the court of appeals. We have never addressed whether Wis. Stat. § 973.15(5) overrides the factual-connection test of Wis. Stat. § 973.155(1)(a), as the court of appeals held below. Nonetheless, under Lira's theory, this court must "defer" to the court of appeals' interpretation under stare decisis principles.

¶42 The court of appeals in this case cited <u>State v. Brown</u>, 289 Wis. 2d 823, as binding precedent. <u>See</u> <u>Lira</u>, Nos. 2019AP691-CR & 2019AP692-CR, ¶¶23, 33-35. In <u>Brown</u>, a Wisconsin probationer had his probation revoked but, before beginning his Wisconsin sentence, he was transferred to federal authorities for separate federal offenses. 289 Wis. 2d 823, ¶3. The defendant in <u>Brown</u> completed his federal sentence and was transferred back to

19

Wisconsin authorities; he then moved for sentence credit for his time spent in federal prison. Id., ¶¶5-7. According to the court of appeals, the government argued that because a revoked probationer's sentence does not begin until "the probationer enters the prison," Wis. Stat. § 973.15(5) was not yet triggered when the defendant was transferred to federal authorities and credit was not due. Id., ¶8 (citing Wis. Stat. § 973.10(2)(b) (2003-04)). The court of appeals rejected this approach, which turned primarily on the coincidence of when the probationer stepped foot in prison. Id., ¶11. However, in so doing, the court of appeals also concluded that Wis. Stat. § 973.155's factual-connection test "is not the correct test" when § 973.15(5) applies. Id. The court held that if an individual is a "convicted offender" and he is "made available to another jurisdiction," the individual is entitled to sentence credit, notwithstanding § 973.155. Id.

¶43 As explained above, the interpretation of Wis. Stat. §§ 973.155 and 973.15(5) provided in Brown ignores the plain meaning of the statutes. Accordingly, to the extent that Brown controlled the meaning and application of §§ 973.155 and 973.15(5) prior to this decision, it is hereby overruled.

¶44 However, Lira asserts that, even if Brown were "wrongly decided," this court must accept its legal analysis as a matter of precedent. It is undoubtedly true that "[o]fficially published opinions of the court of appeals. . . have statewide precedential effect." Wis. Stat. § 752.41(2). And when this court considers legal questions, it "benefit[s] from the analyses of the court of appeals and circuit court." State v. Denny, 2017 WI 17, ¶46, 373

20

Wis. 2d 390, 891 N.W.2d 144. Providing due respect to the legal acuity and experience of lower courts, we have stated that legal interpretations accepted by the court of appeals, especially when the interpretations are longstanding, will not be overturned unless they are "objectively wrong."[9] Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405; see, e.g., AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm., 2017 WI 52, ¶¶50-55, 375 Wis. 2d 329, 895 N.W.2d 368 (discussing both Wisconsin Supreme Court and Wisconsin Court of Appeals precedent in existence for over 20 years and concluding that "[n]o compelling reason has been given to justify deviating from Wisconsin precedent").

¶45 While respecting court of appeals precedent is an important consideration, it is not determinative. This court has never applied the five factors commonly used in a decision to overturn supreme court caselaw to override an interpretation derived solely from the court of appeals. See Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Servs. Ins. Corp., 2006 WI 91, ¶33, 293 Wis. 2d 38, 717 N.W.2d 216 (describing the five

---

[9] For instance, where a decision from the court of appeals is well-reasoned, over the course of many years significant reliance interests have grown around the court of appeals decision, and this court has approved of the decision in prior caselaw, respect for precedent is of substantial importance. See, e.g., Country Visions Coop. v. Archer-Daniels-Midland Co., 2021 WI 35, ¶¶22-28, 396 Wis. 2d 470, 958 N.W.2d 511 (analyzing rights of first refusal for property transfers under legal principles first examined in Wisconsin by the court of appeals (citing Wilber Lime Prods., Inc. v. Ahrndt, 2003 WI App 259, 268 Wis. 2d 650, 673 N.W.2d 339)).

21

factors).[10] Further, we have shown a repeated willingness to interpret and apply the law correctly, irrespective of a court of appeals decision that came to a different conclusion. See, e.g., State v. Ziegler, 2012 WI 73, ¶54, 342 Wis. 2d 256, 816 N.W.2d 238 (withdrawing language from a published court of appeals decision as precedential value because it was "contrary to the plain language of [a] statute"); Manitowoc County v. Samuel J.H., 2013 WI 68, ¶5 n.2, 349 Wis. 2d 202, 833 N.W.2d 109 (concluding that language from a published court of appeals decision must be withdrawn because it "directly conflict[ed] with the plain language of [a] statute"); Wenke, 274 Wis. 2d 220, ¶¶76-77 (overruling a published court of appeals decision "that incorrectly interpreted [a statute]").

¶46 Ultimately, while "published opinions of the court of appeals are precedential," as the state's highest court, the supreme court "has the power to overrule, modify or withdraw language from a published opinion of the court of appeals." Cook v. Cook, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997). "The supreme court, 'unlike the court of appeals, has been designated

_____

[10] The five factors are whether:

(1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency in the law; (4) the prior decision is "unsound in principle;" or (5) the prior decision is "unworkable in practice."

Bartholomew v. Wis. Patients Comp. Fund & Compcare Health Servs. Ins. Corp., 2006 WI 91, ¶33, 293 Wis. 2d 38, 717 N.W.2d 216.

by the constitution and the legislature as a law-declaring court.'" Id. at 189 (quoting State ex rel. La Crosse Tribune v. Cir. Ct. for La Crosse County, 115 Wis. 2d 220, 229-30, 340 N.W.2d 460 (1983)).  It is this court's responsibility to interpret statutes de novo, and a plain meaning reading of Wis. Stat. §§ 973.15(5) and 973.155 conflicts with the court of appeals decision in Brown. See Denny, 373 Wis. 2d 390, ¶46.  Brown's interpretation of §§ 973.15(5) and 973.155 is "objectively wrong" and must be overturned.  Wenke, 274 Wis. 2d 220, ¶21.

¶47 Despite arguing forcefully against Lira's position before the circuit court, the court of appeals, and in briefing before this court, the State at oral argument made an abrupt change in strategy.  It asked the court to reject Lira's request for sentence credit, but also claimed that the factual-connection test under Wis. Stat. § 973.155(1)(a) did not apply to Wis. Stat. § 973.15(5).  The State was apparently concerned that the correct interpretation of § 973.15(5), as previously described, would undermine the IAD and Wisconsin's interstate obligations.

¶48  First, we note that the State's change in legal position is not binding upon the court.  "[W]e are not bound by the parties' interpretation of the law or obligated to accept a party's concession of law.  This court, not the parties, decides questions of law." Carter, 327 Wis. 2d 1, ¶50. As this court explained, an individual may receive sentence credit under Wis. Stat. § 973.15(5) only "according to the terms of s. 973.155" and only upon satisfaction of the factual-connection test.

23

¶49 Furthermore, the State's concern is misplaced. The court is in no way interpreting or applying the IAD, codified under Wis. Stat. § 976.05. The IAD has its own provision on sentence credit:

> During the continuance of temporary custody or while the prisoner is otherwise being made available for trial as required by this agreement, time being served on the sentence shall continue to run but good time shall be earned by the prisoner only if, and to the extent that, the law and practice of the jurisdiction which imposed the sentence allows.

§ 976.05(5)(f).

¶50 The IAD provision could apply only if <u>Wisconsin</u> had transferred Lira to Oklahoma on detainer to face sentencing in Oklahoma. Here, it was <u>Oklahoma</u> that transferred Lira to Wisconsin to face sentencing on Wisconsin charges.[11] We are asked to interpret Wis. Stat. § 973.15(5). The IAD and Wis. Stat. § 976.05(5)(f) are simply not at issue in this case.

¶51 In fact, the interpretation of Wis. Stat. § 973.15(5) advanced by Lira would likely undermine, not enhance, interstate cooperation. If a defendant is entitled to sentence credit for the entire time he is in foreign custody so long as he was a "convicted offender" that was "made available to [the other] jurisdiction," Wisconsin authorities would be strongly incentivized to not transfer prisoners to foreign jurisdictions. By doing so, the transfer could effectively eliminate a Wisconsin

---

[11] Notably, the State itself asserts that it is "likely" that Oklahoma, pursuant to the IAD, applied Lira's time spent on detainer in Wisconsin and Texas toward his Oklahoma sentence.

24

sentence and produce an improper windfall for a prisoner. For example, if Lira's legal position were correct, someone could commit one murder in Wisconsin and another murder in Oklahoma. If the person received consecutive sentences of the same length for the offenses, and he or she were transferred from Wisconsin to Oklahoma under Wis. Stat. § 973.15(5) to complete the Oklahoma sentence, the Wisconsin sentence would in effect be erased. Although the facts underlying this case are (thankfully) unlikely to frequently recur, adopting Lira's legal position could encourage Wisconsin authorities to refuse to return prisoners sent here on detainer under the IAD. The legislature avoided such a result by tying § 973.15(5) to § 973.155.

¶52 In all, Lira is not entitled to credit toward his 1992 and 1999 convictions for the time spent in Oklahoma serving consecutive sentences for unrelated offenses.

### B. Time Spent in Wisconsin and Texas Between May 2005 and April 2006.

¶53 Lira also argues that under Wis. Stat. § 304.072(5) he is entitled to sentence credit for time spent in Wisconsin and Texas between May 22, 2005, and April 5, 2006, while on detainer from Oklahoma. The court of appeals agreed with Lira and held that sentence credit against the 1992 and 1999 cases was due. Lira, Nos. 2019AP691-CR & 2019AP692-CR, ¶¶41-46.

¶54 Wisconsin Stat. § 304.072(5) states:

The sentence of a revoked probationer shall be credited with the period of custody in a jail, correctional institution or any other detention facility pending

25

revocation and commencement of sentence according to the terms of s. 973.155.

¶55 Lira argues that he was a "revoked probationer" who, between May 2005 and April 2006, was in custody "pending revocation and commencement of his sentence." However, like Wis. Stat. § 973.15(5), the plain language of Wis. Stat. § 304.072(5) applies only under "the terms of s. 973.155." Kalal, 271 Wis. 2d 633, ¶45. In turn, Wis. Stat. § 973.155(1)(a) permits sentence credit only where confinement is factually "in connection with the course of conduct for which the sentence was imposed."

¶56 The parties do not dispute that Oklahoma transported Lira to Wisconsin in May 2005 to face pending charges for endangering safety and escape. See also Lira, Nos. 2019AP691—CR & 2019AP692-CR, ¶8 ("In mid May 2005, Oklahoma sent Lira to Wisconsin to face trial on his outstanding Wisconsin charges."). Although Lira was inexplicably released and fled to Texas in the process, he eventually pleaded guilty to the 2004 and 2005 charges in Wisconsin. He was sentenced on March 17, 2006, and, expectedly, he was transported 19 days later to Oklahoma in order to complete the remainder of the Oklahoma sentence. At no point in time was Lira brought to and confined in Wisconsin or Texas because of or on the part of the revocation order in the 1992 case, or the removal of a stay in sentence in the 1999 case. Lira was not transported to Wisconsin to serve his 1992 or 1999 sentences. He was an Oklahoma prisoner sent to face trial on factually unrelated charges initiated in 2004 and 2005. There is no dispute that the convictions for endangering safety, escape, and bail jumping are

26

not factually connected to "the course of conduct for which [the sentences for the 1992 and 1999 drug and firearm offenses were] imposed." Wis. Stat. § 973.155(1)(a).

¶57 The court of appeals granted Lira credit against the 1992 and 1999 sentences for his time in Wisconsin and Texas while on detainer because the 2004 endangering safety charge precipitated the revocation in the 1992 case and the removal of the stay in sentence in the 1999 case. According to the court of appeals, "Lira's endangering safety charge in 2004 initiated the probation hold, the revocation orders, and his eventual reconfinement on the parole and probation violations in the 1992 and 1999 cases. This created a relationship between the cause of confinement between Lira's 1992 and 1999 cases and his later 2004-05 cases." Lira, Nos. 2019AP691-CR & 2019AP692-CR, ¶45 (citations omitted).

¶58 Yet this court has repeatedly held that the test under Wis. Stat. § 973.155(1)(a) is a factual one. Carter, 327 Wis. 2d 1, ¶56 (requiring "factual connection between custody and the conduct for which sentence is imposed"). Mere "procedural connection" is insufficient to warrant sentence credit. Id.

¶59 In State v. Elandis Johnson, a criminal defendant was on bond pending sentencing for a marijuana trafficking charge. 318 Wis. 2d 21, ¶¶5-6. After breaking the conditions of bond once before, he was charged with possessing marijuana and also bail jumping. Id., ¶7. The defendant remained in custody for a time, and received concurrent sentences for the initial trafficking charge, the marijuana possession charge, and the bail jumping

27

charge. Id., ¶¶8, 10, 12. He was on bond pending resolution of the drug trafficking charge and he was charged with bail jumping. In addition, the defendant was sentenced to concurrent sentences for the charges at the same hearing. Despite these clear procedural connections, this court determined that the defendant's time in custody after being arrested for possessing marijuana and bail jumping were not "factually connected" to the trafficking charge under Wis. Stat. § 973.155 and credit was not due. Id., ¶¶3, 24 (noting that the period of custody was "tied directly to only [the marijuana possession and bail jumping]").

¶60 Similarly, in State v. Beets, a criminal defendant was charged with burglary which "triggered [a] probation hold" for a separate drug offense. 124 Wis. 2d 372, 378-79, 369 N.W.2d 382 (1985). Although the defendant received credit against the burglary charge while he was in custody awaiting sentencing on both the burglary and drug offenses, as soon as he was sentenced for the drug offense and began serving time in connection with that offense, "any connection" to the burglary charge was "severed." Id. at 379. This is despite the clear procedural connection between the drug and burglary offenses. The burglary charge "initiated the scrutiny into Beets' background that resulted in the probation hold, the revocation, and the ultimate concurrent drug sentences." Id. at 378-79; see also Marcus Johnson, 304 Wis. 2d 318, ¶¶76-77 (holding, in a criminal battery case, that time spent in juvenile commitment which would have occurred "even if the . . . battery had not occurred" did not

28

justify sentence credit toward the battery offense, despite "[t]he fact that [the defendant] was on signature bond").

¶61 By contrast, when custody of an individual is at least in part factually connected to an offense, this court has not been hesitant to provide credit under Wis. Stat. § 973.155. For example, in State v. Carter, this court granted credit to a defendant who was detained in another state for both a probation violation in that state and a Wisconsin warrant. 327 Wis. 2d 1, ¶62. The custody resulted "in part from the Wisconsin warrant," and the factual-connection test was met. Id., ¶79.

¶62 Here, the court of appeals cites a mere procedural connection between the 1992 and 1999 cases and the 2004 endangering safety charge to justify credit. It asserted that the endangering safety charge legally "initiated" Lira's reconfinement for the 1992 and 1999 cases. However, just as the defendant in Elandis Johnson was charged with bail jumping and was detained while on bond for a separate charge, and the defendant in Beets was sentenced to a drug offense only as a result of a burglary charge, simply because the 1992 and 1999 sentences occurred under legal procedure because of Lira's choice to endanger safety in 2004, does not mean that he was transferred to Wisconsin on May 22, 2005, as a matter of fact for the 1992 and 1999 sentences. Unlike the defendant's custody in Carter, Lira was not sent to Wisconsin on a detainer to finish serving his 1992 and 1999 sentences. Rather, he was transferred to Wisconsin to face the 2004 and 2005 charges of endangering safety, escape, and bail jumping.

29

¶63 Despite the close procedural ties between the 1992, 1999, 2004, and 2005 offenses, Lira would have been transferred on detainer to Wisconsin "even if the. . . [1992 and 1999 offenses] had not occurred." Marcus Johnson, 304 Wis. 2d 318, ¶76. Wisconsin Stat. § 973.155(1)(a) does not apply, and Lira is not entitled to sentence credit under Wis. Stat. §§ 304.072(5) or 973.155 for any time spent in custody in Wisconsin and Texas between May 22, 2005, and April 5, 2006.

## IV. CONCLUSION

¶64 Lira argues that he is entitled to sentence credit against his 1992 and 1999 cases for time spent incarcerated in Oklahoma between 2006 and 2017. According to Lira, he was "made available" to Oklahoma and, under Wis. Stat. § 973.15(5), he is entitled to credit for time served. In addition, Lira claims that under Wis. Stat. §§ 304.072(5) and 973.155, he must receive credit for time spent detained in Wisconsin and Texas from 2005 to 2006.

¶65 Both Wis. Stat. §§ 973.15(5) and 304.072(5) incorporate Wisconsin's foundational sentence-credit statute, Wis. Stat. § 973.155, and under § 973.155, Lira is not entitled to credit. Neither his incarceration in Oklahoma between 2006 and 2017 nor his detention in Wisconsin and Texas between 2005 and 2006 were "in connection with the course of conduct for which [the 1992 and 1999 sentences were] imposed." § 973.155(1)(a). Thus, we reverse the court of appeals, and conclude that Lira is not entitled to sentence credit.

*By the Court.*—The decision of the court of appeals is reversed.